744 P.2d 795

STATE of Idaho, Plaintiff–Respondent,

v.

Tim McCoy HENDERSON,
Defendant–Appellant.

No. 16277.

Court of Appeals of Idaho.

July 13, 1987.

William M. Appleton, Coeur d'Alene for defendant-appellant.

Jim Jones, Atty. Gen., Steven J. Schuster, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

Tim Henderson was charged with the crime of grand theft following his attempt to purchase $500,000 worth of silver from the Sunshine Mining Company (Sunshine) with forged cashier's checks. At his arraignment he pled not guilty. A subsequent plea bargain resulted in the state's dismissal of a related charge of attempted escape in exchange for Henderson's plea of guilty to grand theft. The plea was accepted, the trial setting vacated, and a presentence report ordered. Six days later, Henderson filed *pro se* motions for appointment of new counsel and for withdrawal of the guilty plea. The district court denied both motions. Henderson was later sentenced to an indeterminate term not to exceed seven years. He appeals, urging that the district court abused its discretion in denying his motion to withdraw the guilty plea. We reverse.

Henderson has the burden of showing an abuse of discretion. He begins with two related arguments. The first point of contention rests on Henderson's intent at the time he presented the cashier's checks to Sunshine. He argues that prior to acceptance of his guilty plea, the court failed to adequately inform him of the intent element requisite to the crime of theft. Next, because Henderson had inadequate knowledge of the intent requirement, he argues that he could not intelligently and voluntarily plead guilty to the crime.

■ Before accepting a guilty plea, the court must satisfy itself that the plea is offered voluntarily, knowingly and intelligently. I.C.R. 11(c); *Fowler v. State,* 109 Idaho 1002, 712 P.2d 703 (Ct.App.1985). A voluntary plea cannot be made without disclosure to the accused of the intent element of a specific intent crime. *Sparrow v. State,* 102 Idaho 60, 625 P.2d 414 (1981); *Fowler v. State, supra; State v. Vasquez,* 107 Idaho 1052, 695 P.2d 437 (Ct.App.1985).

We must examine the record of the proceedings at which the guilty plea was taken and the record of prior proceedings to determine whether the accused was adequately informed of the specific intent element. Here, Henderson was arraigned on June 25, 1985. The prosecutor's information was read to Henderson; it charges that Henderson "wilfully, unlawfully and feloniously, pursuant to a scheme to defraud, obtained property of the Sunshine Mining Company ... by falsely representing that certain checks ... were legitimate Cashier's Checks when in fact said Cashier's Checks were false and forged." Henderson was then asked if he understood "those words" to which he replied "Yes." He entered a plea of not guilty.

Four months later Henderson decided to change his plea. Noting that it had been "quite some time" since Henderson had been arraigned, the court reviewed some of the rights that would be waived by a guilty plea. Among other things, the court told Henderson: "You are admitting the truth of the matters set forth in the Information, including intent, and you would be admitting that you are guilty of the crime charged." The court advised Henderson of the maximum possible penalty and then asked: "Do you understand those things?" No answer to this question was received. Henderson asked to speak to his attorney for a minute. His attorney then replied: "I believe we are prepared to proceed." The court asked several other questions of Henderson, both before and after taking his plea of guilty. Appropriate answers were given and the judge found that the guilty plea was knowingly, willingly and voluntarily made. Thus, as far as the

record shows, the only explanation given to Henderson about the elements of the crime came from reading the information and from the above statements by the court.

Henderson was charged with grand theft under I.C. § 18–2403. Grand theft is a specific intent crime. It may be committed in several ways but generally does not need to be pled in a particular way. *See* I.C. § 18–2409. The parts of I.C. § 18–2403 which might apply in this case and which show the requisite intent are:

(1) A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

(2) Theft includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subsection (1) of this section, committed in any of the following ways:

(a) By deception obtains or exerts control over property of the owner;

(b) By conduct heretofore defined or known as larceny; common law larceny by trick; embezzlement; extortion; obtaining property, money or labor under false pretenses; or receiving stolen goods;

.　　.　　.　　.　　.

(d) By false promise:

1. A person obtains property by false promise when pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or, as the case may be, does not believe that the third person intends to engage in such conduct.

As we have shown, the information itself did not specifically mention an intent to deprive or an intent to defraud. It did not allege that Henderson knew or had reason to know that the cashier's checks were false and forged and would not be paid when presented. Nothing in the record

shows that, when the guilty plea was entered, Henderson had been told that if the case went to trial the state would have to prove the specific intent and knowledge required for a conviction under this statute. What Henderson's trial counsel may have told Henderson about elements of proof or possible defenses is not shown.[1]

Six days after pleading guilty Henderson prepared and filed two *pro se* motions. One asked for appointment of new counsel and the second asked for permission to withdraw the plea. A few days later the court conducted a hearing on both motions. Henderson explained that his attorney had visited him in jail:

[A]nd all he could talk about was me entering a plea of guilty to this. And I'd just gotten out of the hospital with a bleeding ulcer, and shortly after found out that I've got problems with gallbladder, and I'm going to have to have it removed. And I just wasn't thinking right, and I wound up coming in here pleading guilty to something that I'm not guilty of—intentionally not guilty of. Let's put it that way.

THE COURT: I don't understand that phrase.

MR. HENDERSON: Well, yes, I did come up with the checks to buy silver from Sunshine made out to Silver—

THE COURT: I'm not asking you to explain your conduct, but I didn't understand your phrase that you're intentionally not guilty of something. And I don't want you to incriminate yourself.

MR. HENDERSON: All right, okay.

THE COURT: If you can explain that phrase to me without explaining the details of the crime, I'd be interested.

MR. HENDERSON: I did not come up here intentionally to take anybody of anything.

THE COURT: Okay.

MR. HENDERSON: Anyway, that's what brought this on, and the reason I was asking for a change of attorneys.

When asked why he wanted to change his plea, Henderson said "Because I feel

I'm not guilty.... [A]t the time I made my plea I was very sick, and I still am." Henderson's attorney added the following:

Well, your Honor, from talking with Mr. Henderson it's my understanding that he at this point in time is feeling that he did not have the requisite intent to fall within being guilty of the grand theft statute. I think specifically it's his feeling that he did not have the knowledge that the checks were bad at the time that he presented them—or his allegedly presenting them.

As to the illness aspect, I don't think that there's any question that Mr. Henderson does have a physical illness. He was in the hospital for a period of time for tests, and so on. It's my understanding that a physician has diagnosed that Mr. Henderson has gallstones, and may have to have his—these stones surgically removed, and also is under therapy for an ulcer. But that's a physical illness, as I understand it.

Henderson was free to make these assertions. The colloquy at the time his guilty plea was taken did not cover these points. On the record these allegations are largely undisputed. We are forced to say that they leave room for doubt about the voluntariness of Henderson's guilty plea. However, we do not need to decide that issue.

This is not a situation where the defendant pled guilty, discovered what his sentence would be, and then sought to withdraw the plea. Rather, this is a case where the motion was filed before judgment and sentencing. Consequently, Henderson was not required to demonstrate a "manifest injustice," nor was he required to establish a constitutional defect in his plea. He was required only to present a fair and just reason for withdrawing the plea. 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE (CRIMINAL) § 538 (1982); 3 AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE, Standard 14–2.1(a) (2d ed. 1980); *United States v. Roberts*, 570 F.2d 999 (D.C.Cir. 1977), *later app.* 600 F.2d 815 (D.C.Cir. 1979), *aff'd*, 445 U.S. 552, 100 S.Ct. 1358, 63

---

1. Henderson's trial counsel is not the same attorney who represents him in this appeal.

L.Ed.2d 622 (1980); *United States v. Carden*, 599.F.2d 1320 (4th Cir.1979); *Pennsylvania v. Campbell*, 309 Pa.Super. 214, 455 A.2d 126 (1983).

■ In granting or denying a motion to withdraw a guilty plea before sentencing has occurred, the district court is empowered with broad discretion, *State v. Howell*, 104 Idaho 393, 659 P.2d 147 (Ct.App.1983), liberal exercise of which is encouraged. *State v. Freeman*, 110 Idaho 117, 714 P.2d 86 (Ct.App.1986); *State v. Howell, supra.*

■ The existence of prejudice to the state is a factor in a court's decision. However, it is widely held that even absent any prejudice to the state, the accused must present some specific reason for withdrawing his plea. *United States v. Roberts, supra.* Failure to present and support a plausible reason, even absent prejudice to the prosecution, will dictate against granting the withdrawal. *United States v. Webster*, 468 F.2d 769 (9th Cir.1972).

In response to Henderson's motion, the prosecution made no showing of prejudice. The only discussion on this point occurred when the district judge asked the prosecutor whether, if the plea were set aside, the state would be prepared to try the case on the originally scheduled trial date—which was then two days hence. The prosecutor said he could not be ready that soon because witnesses had been advised that the trial was "called off." However, the prosecutor did not indicate that he would be unable to proceed, or that any witnesses would be unavailable, if the trial were rescheduled.

■ Upon this record, Henderson's motion should have been granted. In ruling otherwise, the district judge observed that withdrawal of a guilty plea before judgment and sentencing is not an "automatic" right. We agree. But where, as here, a fair and just reason for withdrawing the plea has been presented, and no prejudice to the state has been shown, the defendant is entitled to liberal allowance of his request for a trial.

Accordingly, we hold that defendant must be permitted to withdraw his guilty plea. The state is permitted to refile the attempted escape charge dismissed as a result of the plea agreement. *Cf. People v. Ivery*, 44 Colo.App. 511, 615 P.2d 80 (1980). The case is remanded for further proceedings consistent with this opinion.

BURNETT, J., concurs.

WALTERS, C.J., dissents without opinion.