179 P.3d 1084

STATE of Idaho, Plaintiff–Respondent,

v.

Jerry Wayne LARAMORE,
Defendant–Appellant.

No. 33041.

Court of Appeals of Idaho.

Nov. 30, 2007.

Review Denied March 26, 2008.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Michael J. Bartlett argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

LANSING, Judge.

In this appeal from a judgment of conviction for attempted strangulation, we are called upon to determine whether the statute under which the defendant was convicted was facially void for vagueness and whether the jury instruction defining "reasonable doubt" lessened the State's burden of proof and thereby violated the defendant's right to due process.

Jerry Wayne Laramore was charged with attempted strangulation in violation of Idaho Code § 18–923. The information alleged that he committed the crime against a woman with whom Laramore was in a dating relationship. Laramore filed a motion to dismiss the charge on multiple constitutional grounds, including a contention that section 18–923 is unconstitutionally vague. The district court denied the motion and the matter proceeded to trial. At a jury instruction conference, Laramore objected to the district court's proposed jury instruction defining "reasonable doubt." He asserted that the

instruction understated the State's burden of proof and therefore did not meet constitutional standards. The district court disagreed and gave the instruction. The jury returned a guilty verdict. Laramore appeals, challenging the district court's decisions on his dismissal motion and his objection to the jury instruction.

## I.

### ANALYSIS

#### A. Void–for–Vagueness Challenge

The statute that Laramore was convicted of violating, I.C. § 18–923, defines the offense of attempted strangulation as follows:

(1) Any person who willfully and unlawfully chokes or attempts to strangle a household member, or a person with whom he or she has or had a dating relationship, is guilty of a felony punishable by incarceration for up to fifteen (15) years in the state prison.

(2) No injuries are required to prove attempted strangulation.

(3) The prosecution is not required to show that the defendant intended to kill or injure the victim. The only intent required is the intent to choke or attempt to strangle.

. . . .

(5) "Dating relationship" assumes the same definition as set forth in section 39–6303(2), Idaho Code.

As incorporated by reference in I.C. § 18–923(5), the definition of "dating relationship" in I.C. § 39–6303(2) is "a social relationship of a romantic nature." Laramore contends that the charge against him should have been dismissed on the ground that section 18–923 is facially void for vagueness with respect to this definition of "dating relationship" and also with respect to the mental element of the offense.

▮ Where the constitutionality of a statute is challenged, we review the lower court's determination de novo. *State v. Korsen,* 138 Idaho 706, 711, 69 P.3d 126, 131 (2003). The party attacking a statute on constitutional grounds must overcome a strong presumption of validity. *Id.* Appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *Id.*

▮ The vagueness doctrine is premised upon the Due Process Clause of the Fourteenth Amendment.[1] "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). *See also Gonzales v. Carhart,* — U.S. —, —, 127 S.Ct. 1610, 1628, 167 L.Ed.2d 480, 504 (2007); *Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 525, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539, 552 (1994). That is, due process requires that the statute inform citizens of what the state commands or forbids such that persons of common intelligence are not forced to guess at the meaning of the criminal law. *State v. Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227–28 (1972) (footnote omitted).

▮ A statute may be challenged as unconstitutionally vague on its face or as applied to the defendant's specific conduct. *Korsen,* 138 Idaho at 712, 69 P.3d at 132.

---

1. With respect to all the issues that Laramore raises in this appeal, he argues that there has been a violation of his right to due process under both the Fourteenth Amendment and the Idaho Constitution, Art. 1, § 13. He asserts that our state constitutional provision should be interpreted to provide greater protection than is afforded under the United States Supreme Court's interpretation of the federal constitution. He has not, however, offered any cogent reason why the Due Process Clause of our state constitution should be interpreted differently than the corresponding federal constitutional clause, nor did he do so before the district court. Therefore, we will not separately address the application of the Idaho constitutional provision in this appeal. *See State v. Schaffer,* 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App.1999).

Here, Laramore asserts only a facial challenge to the statute. "A facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697, 707 (1987); *Korsen*, 138 Idaho at 712, 69 P.3d at 132. *See also State v. Newman*, 108 Idaho 5, 12 n. 11, 696 P.2d 856, 863 n. 11 (1985). Stated differently, in a "facial vagueness" challenge, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982); *Korsen*, 138 Idaho at 712, 69 P.3d at 132.

■ Because a defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others ... [a] court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369. The reason for this suggested analytical starting point is readily apparent, for if a statute is not unconstitutionally vague as applied to the defendant's conduct, it necessarily is not unconstitutionally vague on its face. In evaluating Laramore's assertion that the term "dating relationship" is facially vague, however, we are unable to conduct the initial "as applied" analysis suggested in *Hoffman Estates* because the appellate record contains no trial transcript and thus no evidence describing the relationship between Laramore and the alleged victim.

■ In his brief to this Court, Laramore posits a number of hypothetical types of social relationships and argues that ordinary people would have to guess whether these hypotheticals would constitute a "dating relationship" under the statute. He asks, for example:

Is it a dating relationship if there has been only one date, whatever date means, or must there be repeated dates? How many? Is the relationship of a romantic nature if it is based only on physical intimacy but no emotional intimacy? ... Is a relationship romantic if only one party to the relationship feels emotional or physical attraction to the other? ... Is it a romantic relationship if it is a meaningless one night stand?

This is not a proper analysis for a facial vagueness challenge, and such an approach was expressly rejected by the Supreme Court in *Hoffman Estates*. The Court there criticized the Circuit Court of Appeals' determination that the city ordinance at issue was void for vagueness because it was unclear in *some* of its applications, including hypothetical circumstances. *Id.* at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369. Instead of dreaming up hypotheticals in which application of the statute might be in doubt, Laramore must show that "no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745, 107 S.Ct. at 2100, 95 L.Ed.2d at 707. That is, he must demonstrate that there is no type of relationship that plainly falls within the statutory definition of "dating relationship."

This Court can envision many circumstances that would easily fall within that definition. Only one need be identified here. *See generally Korsen*, 138 Idaho at 712, 69 P.3d at 132. The statutory definition clearly applies where the perpetrator and the victim mutually share romantic interest and have gone on many public dates, as that term is commonly employed, over a protracted period of time. Therefore, Laramore's argument that the term "dating relationship" is unconstitutionally vague on its face is without merit.

■ Laramore also asserts that the statutory definition of the mental element of the offense is internally contradictory and therefore facially vague. Laramore argues that one cannot commit the prohibited act, "choke or attempt to strangle" another, without an intent to injure, yet in subsection (3) the statute provides that no intent to injure is required.

■ Laramore's claim of internal contradiction may have some merit with respect to the "attempt to strangle" component of the statute, for the most commonly understood meaning of strangle is "to compress the windpipe ... until death results from the

stoppage of respiration" or "choke to death by compressing the throat" or, at the least, "to interfere with or obstruct seriously or fatally the normal breathing" of the victim. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 2256 (1976). One cannot "attempt" to commit a crime without intending to commit the crime. *See State v. Pratt,* 125 Idaho 546, 558, 873 P.2d 800, 812 (1993). It would seem, therefore, that one could not attempt to strangle an individual without intending to injure. The same is not true of the "choke" component of the offense, however. Commonly, choke means "to make normal breathing difficult or impossible ... by compressing the throat with strong external pressure." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 396. With this meaning, choking an individual generally would entail an intent to at least make the person temporarily uncomfortable or fearful, but it could be done without an intent to inflict a physical injury. Therefore, the mental element as specified in I.C. § 18–923 is not contradictory in all its components or "impermissibly vague in all its applications." *Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1193, 71 L.Ed.2d at 371.

Laramore's contention that the statute is unconstitutionally vague on its face is without merit.[2] Therefore, the district court did not err in denying Laramore's motion to dismiss the charge.

### B. Reasonable Doubt Instruction

During Laramore's trial the district court announced its intent to use a jury instruction that stated:

Reasonable doubt is defined as follows: It is not mere possible doubt, because everything relating to human affairs, is open to some possible or imaginary doubt. A reasonable doubt is a doubt based upon evidence or lack of evidence and upon reason and common sense—*the kind of doubt that would make a reasonable person unwilling to base an important decision on that evidence.* If, after you compare and consider all the evidence in the case, you do not have an abiding faith amounting to a moral certainty of the truth of the charge,

then you should find the defendant not guilty. If you are convinced to a moral certainty of the truth of the charge, then you should find the defendant guilty.

(Emphasis added.) Laramore objected to this instruction, arguing that its definition of reasonable doubt as "the kind of doubt that would make a reasonable person *unwilling* to base an important decision on that evidence" was an incorrect statement of law and lessened the State's burden of proof to his prejudice. Laramore requested that the court instead give an instruction that defined a reasonable doubt as "the kind of doubt which would make an ordinary person *hesitate to act* in the most important affairs of his or her own life." The district court overruled Laramore's objection. On appeal, Laramore reasserts that the given instruction's use of the phrase "unwilling to base an important decision" in lieu of the phrase "hesitate to act," violated his constitutional right to due process under the United States Constitution by altering the reasonable doubt standard.

The instruction used by the district court here departed from the instruction defining reasonable doubt that has been approved by the Idaho Supreme Court and adopted as a pattern instruction, Idaho Criminal Jury Instruction 103. It states:

A defendant in a criminal action is presumed to be innocent. This presumption places upon the state the burden of proving the defendant guilty beyond a reasonable doubt. Thus, a defendant, although accused, begins the trial with a clean slate with no evidence against the defendant. If, after considering all the evidence and my instructions on the law, you have a reasonable doubt as to the defendant's guilt, you must return a verdict of not guilty.

Reasonable doubt is defined as follows: It is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is the state of the case which, after the entire comparison and consideration of all the

---

**2.** A third challenge to the constitutionality of I.C. § 18–923 was withdrawn by Laramore at oral argument.

evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

I.C.J.I 103. For the last thirty-seven years, both before and after adoption of the I.C.J.I. pattern instructions, the Idaho Supreme Court has been quite clear that the language now found in I.C.J.I. 103 is its approved instruction defining reasonable doubt. *See State v. Sheahan*, 139 Idaho 267, 273–74, 77 P.3d 956, 962–63 (2003); *State v. Hairston*, 133 Idaho 496, 513–14, 988 P.2d 1170, 1187–88 (1999); *State v. Merwin*, 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998); *State v. Sivak*, 127 Idaho 387, 390, 901 P.2d 494, 497 (1995); *State v. Hoffman*, 123 Idaho 638, 643, 851 P.2d 934, 939 (1993); *State v. Rhoades*, 121 Idaho 63, 82–83, 822 P.2d 960, 979–80 (1991); *State v. Enno*, 119 Idaho 392, 403, 807 P.2d 610, 621 (1991); *State v. Cotton*, 100 Idaho 573, 576, 602 P.2d 71, 74 (1979); *State v. Holm*, 93 Idaho 904, 908, 478 P.2d 284, 288 (1970).

Despite the Supreme Court's approval of the language in I.C.J.I. 103, many appeals have arisen from trial courts' use of instructions that modify or entirely depart from the approved language. *See, e.g., Sheahan*, 139 Idaho at 274–75, 77 P.3d at 963–64; *Merwin*, 131 Idaho at 647, 962 P.2d at 1031; *Hoffman*, 123 Idaho at 643, 851 P.2d at 939; *Rhoades*, 121 Idaho at 82–83, 822 P.2d at 979–80; *Enno*, 119 Idaho at 403, 807 P.2d at 621; *Cotton*, 100 Idaho at 577 n. 2, 602 P.2d at 75 n. 2; *State v. Cherry*, 139 Idaho 579, 585, 83 P.3d 123, 129 (Ct.App.2003); *State v. Kuhn*, 139 Idaho 710, 712, 85 P.3d 1109, 1111 (Ct. App.2003); *Harris*, 136 Idaho at 485–86, 36 P.3d at 837–38; *State v. Stricklin*, 136 Idaho 264, 267, 32 P.3d 158, 161 (Ct.App.2001); *State v. Gleason*, 130 Idaho 586, 589–90, 944 P.2d 721, 724–25 (Ct.App.1997); *State v. Priest*, 128 Idaho 6, 12, 909 P.2d 624, 630 (Ct.App.1995). In *Merwin*, 131 Idaho at 647, 962 P.2d at 1031, our Supreme Court upheld the use of a different reasonable doubt instruction over a due process challenge, but warned that "any court which varies from jury instructions previously approved by this Court does so at considerable risk that the

verdict rendered will be overturned on appeal." Similarly, in *Sheahan* our Supreme Court, while finding no constitutional error in the reasonable doubt instruction given, said:

Despite the ruling in this case there appears to be no reason to depart from the standard instruction set forth in Idaho Criminal Jury Instructions 103 and approved for use by this Court. Such departures have created unnecessary controversies with nothing added by way of clarity. The instruction in this case is adequate but is, if anything, less clear than the accepted instruction. Trial courts are encouraged to avoid unnecessary appeals and controversy by utilizing the instruction that has an accepted history defining the burden the State bears.

*Sheahan*, 139 Idaho at 275, 77 P.3d at 964.[3]

The pattern jury instructions also contain an alternative reasonable doubt instruction, I.C.J.I. 103A, which states:

Under our law and system of justice, the defendant is presumed to be innocent. The presumption of innocence means two things.

First, the state has the burden of proving the defendant guilty. The state has that burden throughout the trial. A defendant is never required to prove [his][her] innocence, nor does the defendant ever have to produce any evidence at all.

Second, the state must prove the alleged crime beyond a reasonable doubt. A reasonable doubt is not a mere possible or imaginary doubt. It is a doubt based on reason and common sense. It is the kind of doubt which would make an ordinary person hesitant to act in the most important affairs of his or her own life. If after considering all the evidence you have a reasonable doubt about the defendant's guilt, you must find the defendant not guilty.

While the Idaho Supreme Court has not passed upon this instruction in an appellate decision, we upheld the instruction against a constitutional challenge in *State v. Harris*,

---

**3.** This is not to say that the pattern instructions are flawless, immune to criticism or impossible to improve. Trial judges or attorneys who are

critical of a pattern instruction may do a great service by proposing modifications for the Supreme Court's consideration.

136 Idaho 484, 485–86, 36 P.3d 836, 837–38 (Ct.App.2001).

As Laramore points out, the language used by the district court in instructing the jury that reasonable doubt is the sort of doubt that "would make a reasonable person unwilling to base an important decision on that evidence" is not found in I.C.J.I. 103 or 103A, and neither the United States Supreme Court nor an Idaho appellate court has approved an instruction using that language. Thus, we are presented with an issue of first impression.

 It is fundamental that the constitutional guarantee of due process requires that the government prove beyond a reasonable doubt every element of a charged offense. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Where an instruction defining reasonable doubt is challenged as violative of due process, the question "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor v. Nebraska,* 511 U.S. 1, 6, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583, 591 (1994). If the reasonable doubt instruction is found to have lessened the State's burden of proof, this circumstance "unquestionably qualifies as 'structural error'" not subject to harmless error analysis and necessitates a new trial. *Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182, 191 (1993); *see also Sheahan,* 139 Idaho at 273, 77 P.3d at 962.

There is only one case, *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), where the United States Supreme Court has held that a definition of reasonable doubt violated the Due Process Clause. The instruction in *Cage* told the jury:

[A reasonable doubt] is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty,* raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*

*Id.* at 40, 111 S.Ct. at 329, 112 L.Ed.2d at 342. The Supreme Court held that the highlighted portions of the instruction were erroneous and violated the defendant's constitutional rights. The Court said:

It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Id.* at 41, 111 S.Ct. at 329–30, 112 L.Ed.2d at 342.

Thereafter, in *Victor,* the United States Supreme Court addressed the propriety of two reasonable doubt instructions from two consolidated cases. One of the challenged instructions stated:

"Reasonable doubt is defined as follows: It is *not a mere possible doubt;* because everything relating to human affairs, and *depending on moral evidence,* is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty,* of the truth of the charge."

*Victor,* 511 U.S. at 7, 114 S.Ct. at 1244, 127 L.Ed.2d at 591–92. A divided Court held that this instruction met constitutional standards. Thus, the United States Supreme Court has found no constitutional error in an instruction defining reasonable doubt in language identical to that found in I.C.J.I. 103. The second instruction at issue in *Victor* stated:

"Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after

full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty,* of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case,* provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

*Id.* at 18, 114 S.Ct. at 1249, 127 L.Ed.2d 598 (emphasis added). The Supreme Court found that the portion of this instruction equating reasonable doubt with "substantial doubt" was problematic. The Court nevertheless held that this second instruction was not constitutionally infirm, in part because it also:

> provided an alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act. This is a formulation we have repeatedly approved, *Holland v. United States,* 348 U.S. at 140, 75 S.Ct. at 137; *cf. Hopt v. Utah,* 120 U.S. [430] at 439–441, 7 S.Ct. [614] at 618–620,[ 30 L.Ed. 708 (1887) ] and to the extent the word "substantial" denotes the quantum of doubt necessary for acquittal, the hesitate to act standard gives a common-sense benchmark for just how substantial such a doubt must be.

*Id.* at 20–21, 114 S.Ct. at 1250, 127 L.Ed.2d at 599.

In *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), an instruction defined reasonable doubt as "the kind of doubt ... which you folks in the more serious and important affairs of your own lives might be willing to act upon." The Supreme Court held:

*We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, see Bishop v. United States,* 71 App. D.C. 132, 107 F.2d 297, 303, rather than the kind on which he would be willing to act. But we believe that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some. A definition of a doubt as something the jury would act upon would seem to create confusion rather than misapprehension. "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury," *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481, and we feel that, taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.

*Holland,* 348 U.S. at 140, 75 S.Ct. at 138, 99 L.Ed. at 167 (emphasis added).[4] Thus, Laramore is correct in his assertion that under United States Supreme Court precedent, specifically *Holland* and *Victor,* the term "hesitate to act" is the term that has been approved for a reasonable doubt instruction, not the "unwilling" terminology used in his trial.

Idaho's appellate courts have also affirmed the use of instructions that included the "hesitate to act" standard or substantially similar language. *Hoffman,* 123 Idaho at 643 n. 3, 851 P.2d at 939 n. 3; *Enno,* 119 Idaho at 403, 807 P.2d at 621; *Cotton,* 100 Idaho at 577 n. 2, 602 P.2d at 75 n. 2; *State v. Taylor,* 76 Idaho 358, 362, 283 P.2d 582, 585 (1955); *State v. Dickens,* 68 Idaho 173, 181, 191 P.2d 364, 368 (1948); *State v. Nolan,* 31 Idaho 71, 82, 169 P. 295, 298 (1917); *State v. Moon,* 20 Idaho 202, 214, 117 P. 757, 761 (1911); *State v. Gilbert,* 8 Idaho 346, 350, 69 P. 62, 63 (1902); *Kuhn,* 139 Idaho at 713, 85 P.3d at 1112; *Harris,* 136 Idaho at 486, 36 P.3d at 838; *Gleason,* 130 Idaho at 589, 944 P.2d at 724.

Only one Idaho case, *Kuhn,* discusses the use in a reasonable doubt instruction of a term similar to "unwilling to base an important decision." There, the instruction included the following language:

> the entire content of the reasonable doubt instruction that the Court was reviewing.

**4.** *Holland* is of limited use for our analysis, beyond *its* express approval of the "hesitate to act" language, because the opinion does not set forth

"Proof beyond a reasonable doubt" is proof that leaves you with an abiding conviction of the truth of the charge against the defendant. An abiding conviction is one that would make an ordinary person *willing to act* in the most important affairs of his or her own life.

*Kuhn,* 139 Idaho at 712, 85 P.3d at 1111 (emphasis added). This Court noted that while numerous federal circuit courts had criticized use of the "willing to act" language, and instead expressed preference for "hesitate to act," none had concluded that the term impermissibly weakened the reasonable doubt standard. *Kuhn,* 139 Idaho at 713–14, 85 P.3d at 1112–13. In accord, this Court found no constitutional error in the use of the term. But the terminology at issue in *Kuhn* is not the same as the language that is challenged here. In *Kuhn,* this Court recognized an important distinction—that "willing to act" was used in defining "proof beyond a reasonable doubt," not "reasonable doubt." *Kuhn,* 139 Idaho at 713, 85 P.3d at 1112. Here, the challenged language was part of the definition of reasonable doubt. Thus, our decision in *Kuhn* is not dispositive of the issue presented by Laramore.

The instruction used in Laramore's trial did not rest the definition of reasonable doubt solely upon the description as doubt that would make a reasonable person "unwilling to base an important decision upon that evidence." Rather, it also informed the jury that reasonable doubt "is not mere possible doubt, because everything relating to human affairs, is open to some possible or imaginary doubt." This language, or its functional equivalent, appears in both I.C.J.I. 103 and 103A and correctly conveys to the jury that a reasonable doubt is more than mere possible or imaginary doubt. The instruction also says that reasonable doubt should derive from "evidence or lack of evidence and upon reason and common sense," a provision that is unassailable. Finally, the instruction tells the jury that if "you do not have an abiding faith amounting to a moral certainty of the truth of the charge, then you should find the defendant not guilty." This language, or its equivalent, has survived constitutional scrutiny, *Victor,* 511 U.S. at 14–15, 114 S.Ct. at 1247, 127 L.Ed.2d at 596, and correctly communicates the strength of a juror's conviction of the defendant's guilt that must be present in order for the matter to be free of reasonable doubt. We conclude that the instruction, viewed as a whole, correctly conveyed the concept of reasonable doubt and did not offend the Constitution.

We caution, however, that the instruction at issue here is by no means immune from criticism. Linguistically, the description of reasonable doubt as doubt that would make one "hesitate" to act is, in our view, a more accurate formulation than the "unwilling" to act language used here, and we therefore do not advocate the use of this instruction. Nevertheless, considering the remaining components of the instruction, we conclude there is no reasonable likelihood that the jury understood it to allow conviction based on proof insufficient to meet the *Winship* standard. Therefore, the instruction did not violate Laramore's right to due process.

## II.

### CONCLUSION

The district court did not commit reversible error in denying Laramore's motion to dismiss the charge, nor in instructing the jury on the definition of reasonable doubt. The judgment of conviction is therefore affirmed.

Chief Judge PERRY CONCURS.

Judge GUTIERREZ concurs in Part A and dissents in Part B without opinion.