IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 42115

| STATE OF IDAHO, | ) | 2015 Opinion No. 40 |
|---|---|---|
| Plaintiff-Respondent, | ) | Filed: July 7, 2015 |
| v. | ) | Stephen W. Kenyon, Clerk |
| ROBERT MICHAEL WILLISTON, | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment of conviction for attempted strangulation, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

MELANSON, Chief Judge

Robert Michael Williston appeals from his judgment of conviction for attempted strangulation. He argues that the district court abused its discretion by denying his motion to withdraw his guilty plea. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Williston was arrested for felony domestic battery and attempted strangulation after his wife reported that he had slapped her, kicked her in the face, and choked her after a night of drinking. The victim suffered injuries consistent with her allegations, including significant throat trauma consistent with being choked. Pursuant to a plea agreement, Williston pled guilty to attempted strangulation, I.C. § 18-923, and the state dismissed the domestic battery charge.

1

Two weeks before sentencing, Williston filed a motion to withdraw his guilty plea, contending that it was not made knowingly, intelligently, or voluntarily. At the hearing on that motion, Williston testified that he was unaware of the intent element of attempted strangulation and claimed that his counsel told him that he could be convicted of such if he merely touched the victim's neck or throat. The district court denied Williston's motion, determining that his testimony about his counsel's advice was not credible and concluding that Williston had been adequately advised of the intent element of attempted strangulation through the language of the charging document, which his statements at the change of plea hearing indicated he had read. The district court also held that there was no other just reason to permit Williston to withdraw his guilty plea. The district court sentenced Williston to a unified term of twelve years, with a minimum period of confinement of eight years. Williston appeals.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 33(c) governs the withdrawal of guilty pleas.[1] Whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court and such discretion should be liberally applied. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986). The exercise of the trial court's discretion is affected by the timing of the motion to withdraw the plea. *State v. Ballard*, 114 Idaho 799, 801, 761 P.2d 1151, 1153 (1988); *State v. McFarland*, 130 Idaho 358, 361, 941 P.2d 330, 333 (Ct. App. 1997). Although a less rigorous standard applies, presentence withdrawal of a guilty plea is not an automatic right; the defendant has the burden of showing that a just reason exists to withdraw the plea. *State v. Hawkins*, 117 Idaho 285, 289, 787 P.2d 271, 275 (1990); *State v. Ward*, 135 Idaho 68, 72, 14 P.3d 388, 392 (Ct. App. 2000). Once the defendant has met this burden, the state may still avoid a withdrawal of the plea by demonstrating the existence of prejudice to the state. *State v. Dopp*, 124 Idaho 481, 485, 861 P.2d 51, 55 (1993); *State v. Henderson*, 113 Idaho 411, 414, 744 P.2d 795, 798

---

[1] Idaho Criminal Rule 33(c) provides:

> A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw defendant's plea.

(Ct. App. 1987). However, the defendant's failure to present and support a plausible reason will dictate against granting withdrawal, even absent such prejudice. *Dopp*, 124 Idaho at 485, 861 P.2d at 55; *Henderson*, 113 Idaho at 414, 744 P.2d at 798.

Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *Freeman*, 110 Idaho at 121, 714 P.2d at 90. When a district court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## III.

## ANALYSIS

The first step in analyzing a motion to withdraw a guilty plea is to determine whether the plea was knowingly, intelligently, and voluntarily made. *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976); *State v. Hanslovan*, 147 Idaho 530, 536, 211 P.3d 775, 781 (Ct. App. 2008); *Henderson*, 113 Idaho at 412, 744 P.2d at 796. Additionally, I.C.R. 11(c) requires that, before a trial court accepts a guilty plea, the record of the entire proceedings--including reasonable inferences drawn therefrom--show:

(1)    The voluntariness of the plea.
(2)    The defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply.
(3)    The defendant was advised that by pleading guilty the defendant would waive the right against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses against the defendant.
(4)    The defendant was informed of the nature of the charge against him.
(5)    Whether any promises have been made to the defendant, or whether the plea is a result of any plea bargaining agreement, and if so, the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

Accordingly, the determination that a plea is entered knowingly, intelligently, and voluntarily involves a three-part inquiry: (1) whether the defendant's plea was voluntary in the sense that he or she understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his or her rights to a jury trial, to confront his or her accusers, and to refrain from self-incrimination; and (3) whether the defendant understood the consequences of pleading guilty. *Dopp*, 124 Idaho at 484, 861 P.2d at 54; *State v. Carrasco*, 117 Idaho 295, 297, 787 P.2d 281, 283 (1990); *Hawkins*, 117 Idaho at 288, 787 P.2d at 274. The trial court need not establish a factual basis for the crimes charged prior to accepting a guilty plea. *State v. Coffin*, 104 Idaho 543, 545, 661 P.2d 328, 330 (1983). On appeal, the voluntariness of the guilty plea must be reasonably inferred from the record as a whole. *Carrasco*, 117 Idaho at 300, 787 P.2d at 286; *Hawkins*, 117 Idaho at 288, 787 P.2d at 274.

In order to comply with the fourth requirement of I.C.R. 11(c) and show that the plea was voluntary under the first part of the three-part inquiry, a defendant must be informed of the intent element requisite to the charged offense. *Henderson*, 113 Idaho at 412, 744 P.2d at 796; *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *State v. Gonzales*, 158 Idaho 112, 116, 343 P.3d 1119, 1123 (Ct. App. 2015). A record showing that a defendant has been informed of the elements of the crime to which he or she is pleading guilty may be established by showing that the charging document, which the defendant read or had read to him or her, contained a clear reference to the statutory elements, including the element of intent. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Gonzales*, 158 Idaho at 116, 343 P.3d at 1123; *State v. Hansen*, 120 Idaho 286, 288-89, 815 P.2d 484, 486-87 (Ct. App. 1991). Alternatively, the defendant's awareness of the elements of the charged offense may be established by defense counsel's unrebutted on-record representation that the nature of the charge and the elements of the crime were explained to the defendant or by the trial court informing the defendant of such in open court. *See Stumpf*, 545 U.S. at 183; *Gonzales*, 158 Idaho at 116, 343 P.3d at 1123.

Williston argues that his guilty plea was not entered knowingly, intelligently, and voluntarily because he was not informed by the charging information, his attorney, or the district court that the crime of attempted strangulation required proof of specific intent. Further, he alleges that his counsel misinformed him of the intent element that the state was required to

4

prove, telling him that by merely touching the victim's neck or throat he could be found guilty of attempted strangulation.

## A. Statutory Interpretation

Williston's argument presumes that his interpretation of the intent required under I.C. § 18-923 is correct, thereby necessitating that we interpret the language of this statute. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

Idaho Code Section 18-923 provides, in pertinent part:

(1)      Any person who *willfully and unlawfully chokes or attempts to strangle* a household member, or a person with whom he or she has or had a dating relationship, is guilty of a felony punishable by incarceration for up to fifteen (15) years in the state prison

(2)      No injuries are required to prove attempted strangulation.

(3)      The prosecution is not required to show that the defendant intended to kill or injure the victim. The only intent required is the intent to choke or attempt to strangle.

(Emphasis added.) Although the statute is entitled "Attempted strangulation," it provides two means of commission: by "willfully and unlawfully chok[ing]," and by "attempt[ing] to strangle." The clearly described alternative means of commission in the body of the statute control over its title, which, although part of the act, may not be used as a means of creating an ambiguity when the body of the act itself is clear. *State v. Peterson*, 141 Idaho 473, 476, 111 P.3d 158, 161 (Ct. App. 2004); *State v. Browning*, 123 Idaho 748, 750, 852 P.2d 500, 502 (Ct. App. 1993). Thus, the structure of the statute may be peculiar, but we conclude that it is not ambiguous as written. Accordingly, we look to the plain language of the statute to determine whether, as Williston claims, both components of the statute require specific intent.

5

Williston contends that our decision in *State v. Laramore*, 145 Idaho 428, 179 P.3d 1084 (Ct. App. 2007) defined a specific intent element for the crime of attempted strangulation as set out in I.C. § 18-923. He cites to the following language from that decision for support:

> [T]he most commonly understood meaning of strangle is "to compress the windpipe . . . until death results from the stoppage of respiration" or "choke to death by compressing the throat" or, at the least, "to interfere with or obstruct seriously or fatally the normal breathing" of the victim. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 2256 (1976). One cannot "attempt" to commit a crime without intending to commit the crime. *See State v. Pratt*, 125 Idaho 546, 558, 873 P.2d 800, 812 (1993). It would seem, therefore, that one could not attempt to strangle an individual without intending to injure. The same is not true of the "choke" component of the offense, however. Commonly, choke means "to make normal breathing difficult or impossible . . . by compressing the throat with strong external pressure." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 396. With this meaning, choking an individual generally would entail an intent to at least make the person temporarily uncomfortable or fearful, but it could be done without an intent to inflict a physical injury. Therefore, the mental element as specified in I.C. § 18-923 is not contradictory in all its components or "impermissibly vague in all its applications."

*Laramore*, 145 Idaho at 431-32, 179 P.3d at 1087-88.

Williston claims *Laramore* established that the choke component of the offense requires proof of a specific intent to "make the victim fearful or uncomfortable while compressing [the] throat with strong external pressure." We disagree. Our holding in *Laramore* was not so broad as to graft a new intent element onto the statutory language of attempted strangulation. Instead, the above discussion was in the context of determining whether the intent required under each component of the attempted strangulation statute was unconstitutionally vague. Our interpretation of the intent required for the choke component only went so far as to determine that the mental element of I.C. § 18-923 was not contradictory in all its components or impermissibly vague in all its applications. Specifically, Laramore had claimed that a person could not commit the prohibited act, "choke or attempt to strangle" a household member, without an intent to injure, thereby contradicting subsection (3) of the statute and creating unconstitutional vagueness. We rejected that argument, concluding that, although "choking an individual *generally would entail* an intent to at least make the person temporarily uncomfortable or fearful," the choke component of the statute did not require an intent to inflict injury, thereby differentiating it from the "attempted strangulation" component, which inherently involved the

6

specific intent to injure. *Laramore*, 145 Idaho at 432, 179 P.3d at 1088 (emphasis added). Our language regarding what choking an individual "generally would entail" was simply an observation that the desire to cause discomfort or fear in the victim is generally incidental to the intentional performance of the *actus reas* of choking. *See id.*

As a result, our holding in *Laramore* did not establish a specific intent requirement for the choke component of I.C. § 18-923; instead, it implied what a close examination of the plain language of the statute reveals--that different levels of intent apply to the two components of the statute. In other words, the plain language of the statute establishes that the attempted strangulation component requires not only that the conduct be "willful[] and unlawful[]," but also done with a specific intent to strangle. *See State v. Pratt*, 125 Idaho 546, 558, 873 P.2d 800, 812 (1993) (noting that attempt crimes require the state to prove a specific intent to commit the crime attempted); *State v. Crowe*, 135 Idaho 43, 46, 13 P.3d 1256, 1259 (Ct. App. 2000) (noting that guilt of attempt crimes requires the specific intent to commit the attempted offense).

Alternatively, the choke component requires only the general intent to willfully and unlawfully choke the victim, with no specific intent to injure or commit a crime. The general definition of the word "willfully," when applied to the intent with which an act is done or omitted, "implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." I.C. § 18-101(1). Indeed, "willfully" is most nearly synonymous with "intentionally." *State v. Hall*, 90 Idaho 478, 489-90, 413 P.2d 685, 692 (1966); *Archbold v. Huntington*, 34 Idaho 558, 565, 201 P. 1041, 1043 (1921). Further, the word "unlawful" refers to "acting contrary to, or in defiance of the law; disobeying or disregarding the law," and "is equivalent to without excuse or justification." BLACK'S LAW DICTIONARY 1536 (6th ed. 1990). These definitions are consistent with the language of I.C. § 18-923(3), which provides that no intent to kill or injure need be shown, only the intent to do one of the two prohibited acts.[2] Thus,

---

[2]     Our conclusion that the choke component requires only a general intent to choke does not mean, as Williston claims, that a person can violate I.C. § 18-923 simply by touching the neck or throat of a household member as defined by the statute. On the contrary, the common definition of choke, as identified in *Laramore*, provides the *actus reas* required to violate the statute, which is much more than a mere touching of the neck or throat. Regardless, the charging document

7

consistent with the statute's plain language, the state need not *independently* prove an intent to kill or injure the victim for either component. *See* I.C. § 18-923(3). This is because the choke component requires only the general intent to choke, while the attempted strangulation component requires the specific intent to commit the crime of strangulation, which, by its very definition, involves an intent to injure or kill. *See Laramore*, 145 Idaho at 431-32, 179 P.3d at 1087-88. As a result, contrary to Williston's claims, I.C. § 18-923 as a whole does not involve a specific intent element; instead, only the attempted strangulation component requires the state to prove a specific intent to strangle the victim.

**B.      Sufficiency of the Charging Document**

Having interpreted the plain language of the statute, we now must determine whether Williston was adequately informed of the elements of the charged offense. *See Gonzales*, 158 Idaho at 116, 343 P.3d at 1123; *Henderson*, 113 Idaho at 412, 744 P.2d at 796. As previously noted, this may be shown if the record indicates that Williston read or had read to him a charging document that contained a clear reference to the statutory elements, including the element of intent. *See Hamling*, 418 U.S. at 117; *Gonzales*, 158 Idaho at 116, 343 P.3d at 1123; *Hansen*, 120 Idaho at 288-89, 815 P.2d at 486-87.

Here, the charging document provided that Williston did "willfully and unlawfully choke or attempt to strangle" the victim by "wrapping his hand or hands around the victim's throat and squeezing." This language tracks not only the exact statutory language providing the two means of committing the offense and the applicable general intent required for the choke component, but its allegation of how Williston committed the crime is the very definition of choke. When determining whether a defendant was informed of the nature of the charged offense, it is generally sufficient that the charging document set forth the offense in the words of the statute itself, as long as those words fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. *Hamling*, 418 U.S. at 117. As previously noted, I.C. § 18-923 clearly sets out the two components of the statute and, at least for the choke component, provides all of the elements necessary to constitute

---

here made explicit the conduct constituting the alleged choking, precluding any misapprehension as to the required *actus reas*.

the offense. As a result, the charging document was sufficient to inform Williston of the nature of the choke component of the statute.

There is no indication that the specific intent element of the attempted strangulation component of the statute was explained to Williston, but the state did not allege only attempted strangulation. It also alleged the choke component, and the factual allegation sufficed to establish the choke component, which is only a general intent crime. Where a statute enumerates a series of acts, either of which, separately or all together, may constitute the offense, all of such acts may be set forth and charged in a single count. *State v. Griffith*, 94 Idaho 76, 80, 481 P.2d 34, 38 (1971); *State v. Dorsey*, 139 Idaho 149, 152, 75 P.3d 203, 206 (Ct. App. 2003). Although disclosure of the specific intent element of a crime is generally required for a plea to be voluntary, *Henderson*, 113 Idaho at 412-13, 744 P.2d at 796-97, this requirement does not apply merely because the crime includes multiple means of commission, one of which requires specific intent. This is especially true when the alleged conduct is the very definition of one of the proscribed acts, as in this case, and the charging document sufficiently enumerated the intent element of that offense. The attempted strangulation component is a specific intent crime, and neither the statute nor the charging document that tracked that statutory language sufficiently explained the specific intent requirement. But the state need not prove attempted strangulation to show a violation of the statute.[3] Instead, it can meet its burden of proof by alone establishing the elements of the choke component, which requires only general intent to do the prohibited conduct. As a result, because the choke component clearly set out the general intent requirement in the statutory language contained in the charging document, and because the state could prove that Williston was guilty of violating the statute solely by meeting the elements of the choke component while ignoring entirely the attempted strangulation component, no explanation of the specific intent element of the attempted strangulation component was necessary for either the charging document to be sufficient or for Williston's guilty plea to be knowing, intelligent, and voluntary.

---

[3] As suggested in *Laramore*, the attempted strangulation component is little more than the *actus reas* of the choke component done with the intent to cause death or serious injury. *See id.* at 431-32, 179 P.3d at 1087-88.

9

Additionally, a review of the entire record establishes that Williston was aware of the information contained in the charging document and, therefore, was aware of the general intent element of the choke component that was clearly set out therein. The district court noted that, at the change of plea hearing, Williston was asked if he would like the charge read to him, which he declined. The district court inferred from Williston's responses to the remainder of the colloquy that he had previously read or had read to him the charging document. The district court then asked Williston if he needed more time to confer with his attorney. Williston responded that there was nothing to discuss and that he was not denying the allegation, as doing so would be "completely ludicrous" because he "did what [he was] charged with," again indicating that he was familiar with the crime charged and the contents of the charging document.

Moreover, the record shows that the district court directed Williston to look at the charging document while going over its contents, indicating that Williston was viewing the charging document during the change of plea hearing. Williston then admitted that the allegations contained in the charging document, which included that he "willfully and unlawfully" choked the victim by "wrapping his hand or hands around the victim's throat and squeezing," were true. Although the district court did not establish an explicit factual basis for Williston's guilty plea before accepting it, it was not required to do so. *See Coffin*, 104 Idaho at 545, 661 P.2d at 330. Instead, it needed only to determine whether Williston's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; whether he knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and whether he understood the consequences of pleading guilty. *See Dopp*, 124 Idaho at 484, 861 P.2d at 54; *Carrasco*, 117 Idaho at 297, 787 P.2d at 283; *Hawkins*, 117 Idaho at 288, 787 P.2d at 274. The record establishes that the district court did all of this. Accordingly, the statutory elements that the state was required to prove regarding the choke component of the charge were clearly set out in the charging document, which the record establishes Williston had read--previously, in court, or both--and therefore was aware of, making his guilty plea knowing, intelligent, and voluntary.

## C.     Alleged Misinformation by Counsel

Finally, Williston alleged that his defense counsel misinformed him that the crime did not require any intent and that he could be found guilty of attempted strangulation simply by

touching the victim's neck or throat. We agree with the district court's conclusion that this claim lacks any merit. The district court determined that Williston's testimony, which is all that supports this claim, was not credible. As previously noted, the good faith, credibility, and weight of Williston's assertions in support of his motion to withdraw his guilty plea are matters for the discretion of the trial court. *See Hanslovan*, 147 Idaho at 537, 211 P.3d at 782. Williston has not shown that the district court abused that discretion in determining that his claim regarding his attorney's advice was not credible. Moreover, the record supports the district court's finding.[4] Additionally, the record establishes that Williston was sufficiently informed as to the nature of the choke component of the charged offense and its applicable elements, including both the intent and conduct required. As a result, this claim provides no basis for holding that Williston's guilty plea was not knowing, intelligent, and voluntary.

## D.    Just Reason

Williston further argues that, even if we conclude that his guilty plea was constitutionally valid, his claimed ignorance of the specific intent element of a component of the crime that the state did not need to prove should be just reason for withdrawing his guilty plea. In support of this argument, Williston notes that the state has not shown that it would be prejudiced by withdrawal of his guilty plea. However, the defendant's failure to present and support a plausible reason will dictate against granting withdrawal, even absent such prejudice. *Dopp*, 124 Idaho at 485, 861 P.2d at 55; *Henderson*, 113 Idaho at 414, 744 P.2d at 798. We conclude, in light of the foregoing discussion establishing that Williston's plea was made knowingly, intelligently and voluntarily, that Williston has failed to present and support a plausible reason for withdrawing his guilty plea, even absent a showing of prejudice to the state.

---

[4]    For example, at the hearing on his motion to withdraw his guilty plea, Williston testified that he did not believe he had enough time with his attorney, despite his consistent assurances to the contrary in response to repeated inquiries by the district court as to that issue at the change of plea hearing. Additionally, Williston testified that he was told he had to enter a guilty plea that day or the state's offer would be withdrawn. However, the state specifically offered to hold the plea offer open beyond its expiration that day in order to allow Williston more time to confer with his attorney if he felt the short time he had was insufficient. Williston confirmed that he understood the state's offer but declined to take advantage of it.

## IV.

## CONCLUSION

Williston has failed to show that his guilty plea was not knowing, intelligent, or voluntary. He has also failed to provide a just reason for withdrawing his guilty plea. Thus, the district court did not abuse its discretion by denying Williston's motion to withdraw his guilty plea. Accordingly, Williston's judgment of conviction for attempted strangulation is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.