211 P.3d 775

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Larry Dwight HANSLOVAN,
Defendant–Appellant.**

No. 33127.

Court of Appeals of Idaho.

June 25, 2008.

Review Denied Oct. 20, 2008.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

SCHWARTZMAN, Judge Pro Tem.

Larry Dwight Hanslovan appeals from the district court's denial of his motion to withdraw his guilty pleas and the denial of his motion for reduction of sentence. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

In early March of 2005, Larry Dwight Hanslovan and his girlfriend, Barbara Lynn Dehl, sold nearly an ounce of methamphetamine to an undercover police officer and a confidential informant. Two weeks later, in an unrelated incident, Hanslovan and Ronald John Huntsman, Sr., forced two people into a car at gunpoint. The two victims were taken to Dehl's home, bound with packing tape, and beaten in an attempt to obtain confessions regarding items missing from Dehl's residence. John Albert Schmeichel was eventually implicated in the theft. Hanslovan and Huntsman took one of the victims with them to find Schmeichel. Huntsman then shot and killed Schmeichel on the return trip while Hanslovan drove the car. The two remaining victims were eventually released. As a result of these incidents, Hanslovan and Dehl were indicted by a grand jury for several felonies: trafficking in methamphetamine, I.C. § 37–2732B(a)(4), and two counts of kidnapping, I.C. § 18–4501. Hanslovan was also indicted for two counts of use of a firearm or deadly weapon, I.C. § 19–2520. Huntsman alone was indicted for the murder of Schmeichel.

Prior to trial on all counts, the trafficking charge was severed from the remaining charges and eventually amended to delivery of a controlled substance, I.C. § 37–2732(a). Dehl entered a guilty plea to the amended delivery charge on the Friday before trial. Hanslovan then moved for a continuance of his trial and for replacement of counsel, expressing extreme displeasure with his attorney's performance up to that point. The court denied both motions so as not to delay the joint trial of all three defendants on the kidnapping and murder charges, which was scheduled to begin in nineteen days. Hanslovan was given the option of proceeding to trial on the delivery charge with his current attorney, or proceeding *pro se*. The following Monday morning, prior to jury selection, Hanslovan informed the court through his attorney that he wished to plead guilty.

During the plea colloquy, Hanslovan told the court he was pleading guilty to the delivery charge because he had no defense due to his attorney's lack of preparation and that "if I took it to trial that the likelihood that I would get life is very much greater than if I just pled guilty." The court refused to accept the plea at that point because it would be involuntary. Hanslovan's attorney explained to the court that the perceived inadequacies were really due to a difference of

opinion between himself and Hanslovan of how to proceed. The court allowed Hanslovan to consult with his attorney during a recess, after which Hanslovan reaffirmed his desire to plead guilty to the delivery charge. Hanslovan convinced the district court that he was pleading guilty because he was guilty, and admitted facts sufficient to support his guilty plea to the delivery charge.

Six months later, Hanslovan and Dehl appeared before the district court to enter guilty pleas to one count each of second degree kidnapping. Pursuant to an agreement with the state, all of the remaining counts were dismissed. Hanslovan and Dehl both agreed to testify truthfully against Huntsman if called at his trial, which had been delayed, and the state agreed to limit its recommendations at sentencing to eighteen years with ten years determinate for Hanslovan, to be served concurrently with the sentence for delivery, and eight years with three years determinate for Dehl, also to be served concurrently. Both Dehl and Hanslovan waived the right to appeal any decisions of the court to that point, as well as their right to appeal from the sentences imposed, although they reserved the right to file a Rule 35 motion. The plea agreement was only available, however, if *both* Hanslovan and Dehl pled guilty. Furthermore, if either Hanslovan or Dehl could later show "good cause" for the withdrawal of their guilty plea, the other person's plea would *automatically* be set aside as well. During his plea colloquy, Hanslovan expressed some reluctance to follow through with the agreement, noting that it was highly beneficial for Dehl, but not so appealing for himself. Hanslovan informed the court that if the two pleas had not been tied together, he probably would have gone to trial on the kidnapping charges. Nonetheless, he denied that there were any other promises or commitments made to him, or any threats or improper pressures affecting his plea. The court found a factual basis to support Hanslovan's guilty plea, and engaged in a similar plea colloquy with Dehl prior to accepting both guilty pleas to the kidnapping charges.

One month before sentencing on the two charges, and in the midst of Huntsman's trial, Hanslovan moved to withdraw his guilty plea to the kidnapping charge and his attorney moved to withdraw as counsel of record. During the hearing on his attorney's motion, the court was informed for the first time of a secret deal between Hanslovan and Dehl which contributed to Hanslovan's guilty plea for kidnapping. Both Hanslovan's and Dehl's attorneys knew of the secret arrangement, and allegedly counseled Hanslovan not to mention it to the court. The attorneys both asserted that they had clarified that Hanslovan could tell the court about it, but that he could not base his plea on the secret deal. Hanslovan was initially reluctant to accept the plea agreement from the state, concerned by how old he would be when released from prison and his employability at that age. In order to eliminate that concern, Dehl informed Hanslovan that her brother owned a farm and Hanslovan would have a job there and a place to live when he got out of prison.[1] Dehl's brother also offered to put money on the books at the prison for Hanslovan so that he could purchase items while incarcerated. Dehl's attorney was not able to confirm the brother's offer for Hanslovan prior to the plea entry, but both attorneys informed him that this offer could not be put in writing and would not be enforceable. It was later discovered that Dehl's brother told Dehl to tell Hanslovan anything he needed to hear so that Dehl could take advantage of the plea agreement.

Hanslovan testified in support of his attorney's motion to withdraw as counsel of record, accusing him of coercion relating to the kidnapping plea and showing more concern for Dehl's welfare than for his own. Upon inquiry from the court, Hanslovan's attorney revealed that he filed the motion to withdraw the guilty plea at Hanslovan's request, but that he could not ethically support such a motion because it lacked a factual basis. Hanslovan's attorney was granted leave to withdraw as counsel of record, and new coun-

---

1. Hanslovan alleged that he was also promised a new truck to drive every year. However, since Dehl and her attorney both dispute this promise, and Hanslovan's attorney did not recall that being a term of the deal, it will not be considered a term of the secret deal.

sel was appointed to assist Hanslovan on his motion to withdraw the guilty plea.

Two weeks later, the court heard Hanslovan's motion. He asserted four reasons to withdraw his plea to the kidnapping charge and identified one reason to withdraw his plea to the delivery charge, although withdrawal of that plea was not part of the original motion. His new attorney conceded that the only possible basis for withdrawing the delivery plea would be coercion, but could not identify any evidence in the record to support that claim. To support withdrawal of his plea to the kidnapping charge, Hanslovan relied on the state's breach of the plea agreement by requesting a polygraph test prior to testifying for the state,[2] the level of ill will between himself and his former attorney at the time of the plea, his assertion of innocence, and coercion. Hanslovan claimed that he would not have taken the offer if Dehl had not been so adamant about him accepting it because it was a good deal for her. Dehl blamed Hanslovan for her situation and wanted him to take responsibility for what he had done. Hanslovan was advised by his former attorney that he was facing a life sentence if he took the case to trial. As such, Hanslovan felt he didn't have any option but to accept the state's plea offer. Furthermore, Hanslovan accused Dehl and her attorney of exerting undue pressure on him over the course of three days to convince him to accept the plea agreement, including offering him a job and a place to live after he was released from prison—the secret deal.

The state argued against allowing Hanslovan to withdraw his guilty pleas and also asserted the prejudice it would cause. The state had just completed a three-week trial against Huntsman and would have to try Hanslovan individually for the same kidnapping charges. During Huntsman's trial, the state had to counter the "empty seat" defense, and would once again be faced with that defense if Hanslovan were allowed to withdraw his guilty plea and proceed to trial.[3]

The district court denied Hanslovan's motion to withdraw his guilty pleas. The court first held that both guilty pleas were knowing, voluntary, and intelligent. As to the delivery charge, the court found there was no evidence that Hanslovan's plea was coerced and that Hanslovan was merely second-guessing his original decision to plead guilty.

The court then considered the multiple bases for withdrawing his plea to the kidnapping charge. The court first rejected the polygraph request because the state took no action to rescind the plea agreement based on Hanslovan's refusal to take the test. Hanslovan's assertion of ill will was also deemed insufficient for withdrawal of the plea, as the conflict arose primarily from his attorney giving Hanslovan advice he did not like, but which represented a frank evaluation of his legal circumstances. Finally, the court rejected all assertions of coercion making the plea involuntary. The fact that the state's offer was a tied agreement did not improperly affect Hanslovan's plea. Any pressure created by the tied agreement was permissible because Hanslovan's concern for Dehl's welfare was not attributable to the state. The court determined that Hanslovan's subsequent change of heart did not rise to the level of just cause for withdrawal of his guilty plea. Neither did the existence of a secret deal between Dehl and Hanslovan. The court did find that the secret deal contributed to Hanslovan's guilty plea, and declared that the guilty plea would not have been accepted if it had been revealed to the court. However, Hanslovan's assertions that he was coerced or threatened into pleading guilty were not deemed credible. The court was understandably bothered by Hanslovan's knowingly false statements regarding the secret deal, and also chastised Hanslovan's and Dehl's attorneys for not revealing the existence of the agreement.[4] The court concluded:

---

2. Neither Hanslovan nor Dehl were called as witnesses at Huntsman's trial.

3. Huntsman was convicted of first degree murder with a weapons enhancement and two counts of second degree kidnapping—all of the charges for which he was indicted.

4. The court found that Hanslovan was advised by both defense attorneys that the plea agreement would not be accepted if the judge knew about

And this is not an instance where Mr. Hanslovan is somehow an innocent victim of the conduct of [the two attorneys]. He was complicit in the fraud perpetrated upon the court and not [an] innocent victim.

It is manifest that Mr. Hanslovan consciously elected to willfully conceal material information from the court and to falsely testify as to other inducements. Those external inducements did not affect the knowing and voluntary nature of the plea; to the contrary it is manifest that he was so intent on my acceptance of his plea of guilty that he was willing to perjure himself in order to persuade me to accept that plea.

Accordingly, I cannot find that this is a just reason to set aside his plea.

The court did not address Hanslovan's bare claim of innocence, instead moving on to consider whether the state would be prejudiced by allowing withdrawal of the pleas. Pointing to repeated efforts by Hanslovan and Dehl to sever their cases from Huntsman's, and the eventual success of those efforts by pleading guilty, the court found that the state would be prejudiced by allowing Hanslovan to withdraw his pleas because of the "empty seat" defense.

Hanslovan was subsequently sentenced to serve eighteen years for the second degree kidnapping charge, with ten years determinate, and a concurrent term of fifteen years for the delivery charge, with five years determinate. Hanslovan filed a Rule 35 motion for reduction of sentence, citing his successful completion of several classes within the prison, on-going addiction treatment, the support he was receiving from outside prison, and his ability to return to work when released. The district court denied his request to reduce the sentences. Hanslovan appeals both the denial of his motion to withdraw his guilty pleas and the denial of his Rule 35 motion.

the secret agreement. The court decided that it would "leave it to the bar counsel and perhaps prosecuting authorities" to determine whether counsels' conduct rose to the level of ethical or criminal violations.

5. Idaho Criminal Rule 33(c) states in full:

## II.

## DISCUSSION

### A. Motion to Withdraw Guilty Pleas

Idaho Criminal Rule 33(c) governs the withdrawal of guilty pleas.[5] The granting or denial of such a motion is within the discretion of the trial court. *State v. Rodriguez*, 118 Idaho 957, 959, 801 P.2d 1308, 1310 (Ct.App.1990). When the motion is made before the pronouncement of sentence, such discretion should be liberally exercised. *Id.* Before sentencing, the inconvenience to the court and prosecution resulting from a change of plea is ordinarily slight as compared to protecting the right of the accused to trial by jury. *State v. Johnson*, 120 Idaho 408, 415, 816 P.2d 364, 371 (Ct.App.1991). Presentence withdrawal of a guilty plea is not an automatic right; the defendant has the burden of showing a "just reason" exists to withdraw the plea. *State v. Hawkins*, 117 Idaho 285, 289, 787 P.2d 271, 275 (1990); *State v. Ward*, 135 Idaho 68, 72, 14 P.3d 388, 392 (Ct.App.2000); *State v. McFarland*, 130 Idaho 358, 362, 941 P.2d 330, 334 (Ct.App. 1997). We review the decision of the trial court for an abuse of discretion. *State v. Gardner*, 126 Idaho 428, 432, 885 P.2d 1144, 1148 (Ct.App.1994); *Rodriguez*, 118 Idaho at 959, 801 P.2d at 1310. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Appellate review of the denial of a motion to withdraw a plea is limited to

Withdrawal of plea of guilty. A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw defendant's plea.

whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *McFarland*, 130 Idaho at 361, 941 P.2d at 333.

### 1. Delivery of a controlled substance

■■■ During the hearing on Hanslovan's motion to withdraw his guilty pleas, counsel conceded that the only possible basis for withdrawing his plea to the delivery charge was coercion. By so conceding, he waived all other potential grounds to withdraw that plea.[6] Hanslovan's attorney further conceded that there was no evidence in the record to support a claim of coercion. Despite these concessions, Hanslovan raises two additional grounds to withdraw his plea to the delivery charge on appeal, and does not allege any error in the court's denial of his motion based on coercion. Generally, issues not raised below will not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Since Hanslovan conceded there was no basis to withdraw his plea to the delivery charge, the district court did not abuse its discretion by denying this portion of his motion.

### 2. Kidnapping

■■■ Hanslovan's first assertion of error regarding his plea to the kidnapping charge is that the district court applied the wrong standard when analyzing his motion to withdraw the guilty plea. He argues that the district court looked only to the constitutional standard for a valid plea of guilty, and not finding any violations, rejected all of his alleged errors as falling short of the just reason standard. The first step in analyzing a motion to withdraw a guilty plea is to determine whether the plea was knowingly, intelligently, and voluntarily made. *Rodriguez*, 118 Idaho at 959, 801 P.2d at 1310. If the plea is constitutionally valid, the court must then determine whether there are any other just reasons for withdrawal of the plea. *Id.; see also State v. Dopp*, 124 Idaho 481, 485, 861 P.2d 51, 55 (1993); *Ward*, 135 Idaho

at 72, 14 P.3d at 392. This just reason standard does not require that the defendant establish a constitutional defect in the guilty plea. *Id.; State v. Henderson*, 113 Idaho 411, 413, 744 P.2d 795, 797 (Ct.App.1987). Once the defendant has met this burden, the state may avoid withdrawal of the plea by demonstrating the existence of prejudice. *Dopp*, 124 Idaho at 485, 861 P.2d at 55; *Ward*, 135 Idaho at 72, 14 P.3d at 392.

Hanslovan's assertion that his kidnapping plea was involuntary due to coercion from the tied plea agreement from the state or the coercion inherent in the secret deal with Dehl first required a constitutional analysis. In addressing the nature of the joint plea agreement, the court ruled that it did not constitute "constitutionally impermissible pressure," and therefore there was no constitutional violation. The court also addressed the secret deal, holding that the external inducements affecting the plea did not alter its knowing and voluntary nature, especially given the existence of perjury within the plea, and therefore it was a constitutionally valid plea. While the district court's application of a just reason standard independent of constitutionality was limited, it did occur. The court determined that while Hanslovan may have wanted to withdraw his plea out of resentment that Dehl got a better bargain then he, this reason did not rise to the level of just cause. The court further found that the coercion Hanslovan asserted was present in the secret deal not only failed to measure up to a constitutional violation, but also failed to create a just reason or cause for withdrawal of his plea to kidnapping. *See, e.g., Ward*, 135 Idaho at 74, 14 P.3d at 394. The district court applied the proper legal standards to all of Hanslovan's arguments to withdraw his guilty plea.

■■■ Hanslovan next argues that the district court abused its discretion by failing to find just cause for withdrawal of his plea to kidnapping due to the secret agreement with Dehl. While it is true that the district court may not have initially accepted Hanslovan's

---

6. Counsel asserts on appeal that Hanslovan's *pro se* motion raised other grounds for withdrawal of the plea to the delivery charge. However, Hanslovan's motion only addresses the kidnapping

charge, and makes no reference to the delivery charge or any facts which would support withdrawal of that plea.

plea if it had been informed of the secret deal and the financial inducements that it included, revealing the deal after the fact did not necessarily create a just reason for withdrawal. Although Hanslovan was influenced by the secret deal, he was also concerned for Dehl's well-being, and wanted her to be able to take advantage of the state's plea offer. Additionally, Hanslovan knew before he entered his plea that Dehl's brother's promises were not legally enforceable, and that he should not base his decision on what the brother might or might not do in the future. The district court found that Hanslovan's desire to plead guilty was so strong that he knowingly perjured himself in order to accomplish his goal. While a guilty plea cannot be the product of misrepresentation or other impermissible conduct by state agents, *Gardner*, 126 Idaho at 434, 885 P.2d at 1150, the misconduct here, if any, was entirely by the defendants and their attorneys. Hanslovan has cited to no case law supporting his assertion that the mere existence of a secret deal automatically constitutes just cause. The district court did not abuse its discretion by denying Hanslovan's motion to set aside his guilty plea to kidnapping because of his secret deal with Dehl.

■■■■ Hanslovan alternatively asserts that the district court abused its discretion because he is innocent and his plea was coerced.[7] A mere assertion of innocence, by itself, is not grounds to withdraw a guilty plea. *Rodriguez*, 118 Idaho at 960, 801 P.2d at 1311 (quoting *United States v. Barker*, 514 F.2d 208, 221 (D.C.Cir.1975)); *see also State v. Akin*, 139 Idaho 160, 162, 75 P.3d 214, 216 (Ct.App.2003); *State v. Knowlton*, 122 Idaho 548, 549, 835 P.2d 1359, 1360 (Ct.App.1992). Indeed, so long as a factual basis for the plea exists, the court may accept a tactical guilty plea even from a defendant who continues to assert his innocence. *Dopp*, 124 Idaho at 486, 861 P.2d at 56; *Akin*, 139 Idaho at 162, 75 P.3d at 216; *Rodriguez*, 118 Idaho at 960, 801 P.2d at 1311. When an assertion of innocence is made · in order to withdraw a

plea, the court must also consider the reason why the defense was not put forward at the time of original pleading. *Rodriguez*, 118 Idaho at 961, 801 P.2d at 1312. Furthermore, the good faith, credibility, and weight of the defendant's assertions in support of his motion to withdraw his plea are matters for the trial court to decide. *Knowlton*, 122 Idaho at 549, 835 P.2d at 1360; *see also State v. Brown*, 121 Idaho 385, 388–89, 825 P.2d 482, 485–86 (1992).

During his plea colloquy, Hanslovan provided the court with a factual basis for his plea under oath. He informed the court that he told the victim to get in the vehicle, and would have made him do it whether he wanted to or not. Hanslovan also verified that the victim was shown a gun, which ultimately induced him to go with Hanslovan and Huntsman against his will. Hanslovan's current statements contradicting his sworn testimony were found to be less credible than his previous version under oath. Despite Hanslovan's continued assertions of innocence, there was a factual basis to support his guilty plea. *See, e.g., State v. Wyatt*, 131 Idaho 95, 98, 952 P.2d 910, 913 (Ct.App.1998) (refusing to find just cause for withdrawal where the defendant's sworn testimony contradicts his statements in support of withdrawal); *Knowlton*, 122 Idaho at 549, 835 P.2d at 1360.

■■■■ Hanslovan claims that he could not have asserted his defense of innocence sooner because he was coerced by the nature of the state's plea agreement which tied Dehl's ability to plead guilty with his own guilty plea. A plea of guilty is deemed coerced only where it is improperly induced by ignorance, fear or fraud. *State v. Spry*, 127 Idaho 107, 110, 897 P.2d 1002, 1005 (Ct. App.1995); *Mata v. State*, 124 Idaho 588, 594, 861 P.2d 1253, 1259 (Ct.App.1993). If an innocent person would have felt compelled to plead guilty in light of the circumstances, it can properly be said that the plea was involuntary. *Spry*, 127 Idaho at 110–11, 897 P.2d at 1005–06. However, anxiety and pressure

---

7. Hanslovan does not raise on appeal the remaining two grounds for just reason that were raised before the district court: the polygraph test and the ill will between himself and his former attorney. Furthermore, Hanslovan *specifically disclaims* any attempt to raise ineffective assistance of counsel in this appeal, preferring instead to preserve that claim for a post-conviction action.

from the defendant's family situation do not constitute impermissible coercion. *Id.* at 111, 897 P.2d at 1006; *State v. Wilson,* 126 Idaho 926, 928, 894 P.2d 159, 161 (Ct.App. 1995). In *State v. Nath,* 141 Idaho 584, 586, 114 P.3d 142, 144 (Ct.App.2005), this Court held that Nath's guilty plea was not coerced by the external family pressures that contributed to his decision to plead guilty because they were not attributable to the state. Nath argued that his guilty plea was coerced because pleading guilty was the only option that would allow him to be released to take care of his wife and mother, who were both unable to care for themselves. However, this Court concluded otherwise.

Similarly, in *Mata,* 124 Idaho at 594–95, 861 P.2d at 1259–60, this Court held that the state exerted no undue pressure on the defendant's decision to plead guilty despite offering a tied plea agreement where the state agreed to release his wife if he pled guilty. The anxiety and pressure generated by his family situation did not constitute impermissible coercion. *Id.* at 595, 861 P.2d at 1260. This Court recognized the pressures inherent in such third-party plea negotiations, but we are as unwilling now as we were then to upset the bargained-for result of the negotiations where the prosecutor's inclusion of the third party was in good faith.[8] *Id.; see also Politte v. United States,* 852 F.2d 924, 929–31 (7th Cir.1988) (holding that the prosecution's offer to recommend a lenient sentence for defendant's wife if he agreed to plead guilty did not render the plea involuntary or result in coercion).

When a defendant pleads guilty out of concern for the welfare of his girlfriend, instead of a wife or child, the same rules apply. *See Amerson v. State,* 119 Idaho 994, 997, 812 P.2d 301, 304 (Ct.App.1991) (denying defendant's motion to withdraw guilty pleas entered to save girlfriend from the mental distress of testifying at trial). The external pressure Hanslovan now complains of, that Dehl's ability to plead guilty and receive a

more lenient sentencing recommendation from the state was contingent on his also pleading guilty, is not attributable to the state. There have been no allegations that the charges against Dehl were not brought in good faith. We are aware that package deals increase the risk that a defendant will consider the effect of the plea on someone else, *United States v. Martinez–Molina,* 64 F.3d 719, 732 (1st Cir.1995); however, a defendant's consideration of the best interests of a co-defendant does not, by itself, render a plea involuntary. *Mata,* 124 Idaho at 595, 861 P.2d at 1260 ("Aside from requiring special care to insure that the plea was in fact entered voluntarily and was not the product of coercion, we must respect the defendant's choice and 'if an accused elects to sacrifice himself for such motives, that is his choice.'") (quoting *Mosier v. Murphy,* 790 F.2d 62, 66 (10th Cir.1986)). Furthermore, counsel's advice that Hanslovan accept the state's plea agreement was not such overbearing force as to constitute coercion. *See Davidson v. State,* 92 Idaho 104, 106, 437 P.2d 620, 622 (1968) (finding no coercion where attorney advised defendant that his sentence would likely be shorter if he pled guilty than if he went to trial).

Hanslovan was clearly concerned for Dehl's best interests. At one point he even offered to serve fifteen years determinate in exchange for complete dismissal as to her. Although the tied plea agreement placed additional pressure on Hanslovan, the state acted in good faith and it was Hanslovan's decision to sacrifice himself for Dehl's benefit. The district court found that the record refutes Hanslovan's bald assertion of innocence and that his plea was not coerced by the tied nature of the plea agreement. The district court correctly identified the legal standards applicable to Hanslovan's claims, and did not abuse its discretion by concluding there was no just reason to support Hanslovan's motion to withdraw his guilty plea to the charge of kidnapping.[9]

---

8. Good faith has been interpreted to imply that the prosecution of the third party must be based on probable cause to believe that in fact the third party had committed the crime. *Mata,* 124 Idaho at 595, 861 P.2d at 1260.

9. The prejudice asserted by the state, that it would have to try Hanslovan individually against an "empty seat" defense, does not rise to a level that would prevent withdrawal of a plea had just cause been presented. A showing of prejudice requires more than mere inconvenience to the

## B. Rule 35 Motion for Reduction of Sentence

■■■■■ Hanslovan also challenges the denial of his Rule 35 motion for reduction of sentence. If a sentence is within the statutory limits, a Rule 35 motion is a plea for leniency, and we review the denial of the motion for an abuse of discretion. *State v. Huffman,* 144 Idaho 201, 203, 159 P.3d 838, 840 (2007); *State v. Knighton,* 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee,* 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct.App. 1989). When presenting a Rule 35 motion, the defendant must show that the original sentence was unduly severe, or that it is excessive in light of new or additional information subsequently provided to the district court in support of the Rule 35 motion. *Knighton,* 143 Idaho at 320, 144 P.3d at 25; *State v. Sheahan,* 139 Idaho 267, 285, 77 P.3d 956, 974 (2003); *State v. Strand,* 137 Idaho 457, 463, 50 P.3d 472, 478 (2002); *see also State v. Wright,* 134 Idaho 73, 79, 996 P.2d 292, 298 (2000); *State v. Hernandez,* 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App. 1991). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 500, 861 P.2d 67, 70 (1993); *State v. Kerchusky,* 138 Idaho 671, 679, 67 P.3d 1283, 1291 (Ct.App.2003). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver,* 144 Idaho 722, 726–27, 170 P.3d 387, 391–92 (2007).

■■■■■ Where reasonable minds might differ as to the length of the sentence, this Court will not substitute its view for that of the district court. *Brown,* 121 Idaho at 393, 825 P.2d at 490; *Kerchusky,* 138 Idaho at 679, 67 P.3d at 1291; *State v. Admyers,* 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App. 1992). In reviewing the denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *Kerchusky,* 138 Idaho at 679, 67 P.3d at 1291;

*State v. Forde,* 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987). The primary objectives of a sentence of confinement are to protect society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

Second degree kidnapping provides a maximum possible sentence of twenty-five years. I.C. § 18–4504(2). Hanslovan was sentenced to a determinate term of ten years, followed by eight years indeterminate. For delivery of a controlled substance, I.C. § 37–2732(a), the maximum possible penalty is life imprisonment; Hanslovan was sentenced to a determinate term of five years, followed by ten years indeterminate, to be served concurrently with the sentence for kidnapping. As both of these sentences are within the statutory limits, we will review the district court's denial of Hanslovan's Rule 35 motion for an abuse of discretion. Hanslovan provided the court with several documents indicating his progress in programming offered by the prison, including the completion of the Inter–Faith Chapel's Relationships 101 course, and the Choices (God or Drugs) course. Hanslovan was also continuing with addiction treatment courses, and had secured a place to live following his eventual release from prison. While these steps are commendable, they do not make his sentence excessive or unduly severe.

Hanslovan's sentences constitute his seventh and eighth felony convictions. He has a lengthy criminal history spanning more than twenty years. The current crimes occurred while he was released on parole, from which he absconded on the second day. Hanslovan has a very serious substance abuse problem, and has already been through the best programs offered by the Idaho Department of Corrections. While it may be true that Hanslovan saved the lives of the two kidnap victims by convincing Huntsman not to kill them, their lives were nevertheless in jeopar-

state, such as the death of a principal witness, *Dopp,* 124 Idaho at 486, 861 P.2d at 56, the return of evidence to the victims rendering it unavailable to the state, *Wyatt,* 131 Idaho at 98–99, 952 P.2d at 913–14, or the passage of time

that affects witness memory, especially the memory of a witness with limited mental abilities, *State v. Hawkins,* 115 Idaho 719, 722–23, 769 P.2d 596, 599–600 (Ct.App.1989).

dy as a result of his actions. The district court found that Hanslovan presents a serious threat to the safety of the community, and sentenced him accordingly. Although Hanslovan has shown an ability to learn from his mistakes while in prison, and away from the influence of controlled substances, he has not shown that his sentences are excessive or unduly severe. The district court did not abuse its discretion in denying his Rule 35 motion for reduction of sentence.

## III.

## CONCLUSION

The district court did not abuse its discretion by denying Hanslovan's motion to withdraw his guilty pleas or his motion for reduction of sentence. Hanslovan's judgments of conviction and sentences are affirmed.

Chief Judge GUTIERREZ and Judge PERRY concur.

Judge Pro Tem SCHWARTZMAN, also Specially Concurring.

I write separately to highlight some of the troubling aspects of package or tied plea agreements, and to emphasize the importance of the role of the trial court in assessing whether to accept such a deal.

## A. Package Plea Agreements

In package plea agreements, "several confederates plead together and the government gives them a volume discount—a better deal than each could have gotten separately. Consistent with the package nature of the agreement, defendants' fates are often bound together: If one defendant backs out, the deal's off for everybody." *United States v. Caro*, 997 F.2d 657, 658 (9th Cir.1993). Though package plea deal agreements are not per se impermissible, they pose an additional risk of coercion not present when a defendant is dealing with the government alone. Quite possibly, one defendant will be happier with the package deal than his codefendant(s); looking out for his own best interests, the lucky one may try to force his codefendant(s) into going along with the deal. *Id.* at 659. The Supreme Court has also observed that "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person other than the accused might pose a greater danger of inducing a false guilty plea by skewing the risks a defendant must consider." *Bordenkircher v. Hayes*, 434 U.S. 357, 365 n. 8, 98 S.Ct. 663, 669, 54 L.Ed.2d 604, 611 (1978).

Package plea deals therefore impose special obligations: the prosecutor must alert the district court to the fact that co-defendants are entering a package deal; and the district court must *carefully* ascertain the voluntariness of each defendant's plea. *United States v. Martinez–Molina*, 64 F.3d 719, 733 (1st Cir.1995); *see also Caro*, 997 F.2d at 659; *United States v. Castello*, 724 F.2d 813, 815 (9th Cir.1984). Because package-type plea agreements increase the risk that one defendant may coerce another to plead guilty, the trial court is obligated to closely scrutinize whether the defendants are in fact entering their pleas without compulsion or other coercions. *See United States v. Daniels*, 821 F.2d 76, 79–80 (1st Cir.1987); *Martinez–Molina*, 64 F.3d at 734.

Accordingly, the state is charged with the minimal duty of informing the court that the plea agreement is part of a package deal. *Caro*, 997 F.2d at 659–60. Some jurisdictions require specific additional inquiry by the court as to the circumstances surrounding the package deal, including whether "1) the inducement to plead was proper in that the prosecutor acted in good faith and had a reasonable case against the third party to whom leniency is promised; 2) there is a factual basis for the plea in terms of supportable evidence and proportionality of the sentence; 3) the nature and degree of coercion and psychological pressure upon the defendant indicate that the plea is involuntary; 4) the promise of leniency to another was a significant concern to the defendant in choosing to plead guilty; and 5) any other factor impermissibly influenced the defendant's plea." *Howell v. State*, 185 S.W.3d 319, 335–36 (Tenn.2006) (collecting criteria from other jurisdictions and declining to adopt specific extra inquiries due to the sufficiency of the current voluntariness inquiry). Courts in California are required to look to the totality

of the circumstances regarding the package plea to insure that it is in fact voluntary. *Id.* Other jurisdictions require more careful scrutiny of the voluntariness of the plea than in non-package cases, "to insure that the accused understands the plea agreement and the consequences not only to himself, but to such third persons as may be affected by the plea bargain." *Harman v. Mohn*, 683 F.2d 834, 838 (4th Cir.1982); *see also Caro*, 997 F.2d at 659 (" '[T]he trial court should make a more careful examination of the voluntariness of a plea when [it might have been] induced by ... threats or promises' from a third party."); *People v. Sandoval*, 140 Cal. App.4th 111, 43 Cal.Rptr.3d 911, 921 (2006) ("Because such considerations do not bear any direct relation to whether the defendant himself is guilty, special scrutiny must be employed to ensure a voluntary plea.").

### B. Automatic Withdrawal of a Guilty Plea

While package deals appear to be rather in vogue, the distinct term of a deal that if one defendant can show "good cause" for withdrawal of the plea, then the other defendants' pleas will be *automatically* set aside, does not appear to be as common. The First Circuit discussed the withdrawal of pleas under such a package deal, and allowed two defendants to withdraw their pleas on the grounds that the Rule 11 plea colloquy by the court was insufficient to determine that the pleas were not coerced. *Martinez–Molina*, 64 F.3d at 733–34. The court affirmed the denial of a third defendant's motion to withdraw his guilty plea on the basis that he failed to show a fair and just reason for the withdrawal. *Id.* at 733. The court acknowledged that the two pleas must be withdrawn and "the case must be remanded for further Rule 11 proceedings or trial." *Id.* at 734. However the court did not discuss what would happen with the eight remaining defendants' guilty pleas.[10]

In our case, the district judge was the first to mention the wording that "if either defendant shows good cause for withdrawal of the pleas, then the other defendant's plea would automatically be set aside as well." The state agreed that this was what it was hoping for out of the package deal. Neither defendant nor their attorneys objected.

The potential problems and issues with this prong of the package deal are obvious. To begin with, the term continues the already inherently coercive atmosphere of the package plea by purporting to deprive the codefendant(s) of the deal they are relying on if one of their group successfully withdraws his/her plea. Defendants who want to maintain their plea may act to encourage a codefendant not to file a motion to withdraw. And how long does this automatic withdrawal of plea last: prior to sentencing; after sentencing but prior to appeal; after appeal and/or a successful UPCPA?[11] Can this term be asserted by only the state; or do the codefendants have an automatic right to withdraw? Can just the state waive this automatic plea withdrawal, or must all parties waive?

Additionally, the term presents itself as grounds for prejudice to the state if any defendant produces a just reason or cause prior to sentencing. It sets up a form of security for the state to avoid withdrawal of any of the pleas where such prejudice might not otherwise exist. The state should not be allowed to manufacture prejudice as one of the terms of the plea agreement. Finally, the language effectively contracts around Idaho Rule of Criminal Procedure 33(c) and well-established case-law by eliminating the requirement that a defendant show a just reason to withdraw a plea prior to sentencing or manifest injustice after sentencing. Instead, co-defendants may *automatically* have their guilty pleas withdrawn if one of them can satisfy Rule 33(c). It has been stated repeatedly, in this state and other jurisdictions, that there is no automatic right to withdraw a guilty plea prior to sentencing, yet by its plea agreement the state and the

---

**10.** The agreement stated that "should any of the defendants decide to *change his plea* according to the offer, the plea is automatically withdrawn as to all of the defendants."

**11.** At oral argument, counsel for the state argued that the automatic plea withdrawal provision could apply *after* sentencing as well as before sentencing.

defendants seemingly create such an automatic right.

While I don't mean to open up a "Pandora's Box" of legal hobgoblins, the bottom line is simply this: the trial judge will need to take a *proactive* role in addressing and assessing some of these issues *before* accepting a Rule 11 plea package bargain.