# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42595

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 489 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 15, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MATTHEW LARRY PRIDGEN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge. Hon. Clark A. Peterson, Magistrate.

Judgment of conviction for first degree stalking, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Matthew Larry Pridgen appeals from his judgment of conviction for first degree stalking. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A no-contact order prohibited Pridgen from contacting his former girlfriend, Carrie Williams. While that order was in effect, Williams' neighbor, who was aware of the order, called the police after she observed Pridgen enter Williams' house. An officer responded, found Pridgen in Williams' bed, and arrested him. Williams later told police that she asked Pridgen to leave and tried to get away from him, but Pridgen grabbed her, tried to take her pants off, and held her down.

1

The State charged Pridgen with first degree stalking, Idaho Code §§ 18-7905(1)(a) and 18-7906(1)(a); burglary, I.C. § 18-1401; and attempted rape, I.C. §§ 18-6101 and 18-306. At the preliminary hearing, Williams testified that she thought Pridgen was there to have sex. She told him to leave and tried to get away from him, but Pridgen took off his shirt, grabbed her, unbuttoned and unzipped her pants, and held her down. The magistrate refused to bind the stalking, burglary, and attempted rape charges over to the district court. However, the magistrate allowed the State to amend the attempted rape charge to a battery with the intent to commit a serious felony charge, I.C. § 18-911, (the battery charge) and bound that charge over to the district court for trial. In doing so, the magistrate stated,

> [Battery with the intent to commit a serious felony] is a step really below rape or attempted rape. It's a battery, which is--there's been an offensive touching here, the holding and the unbuttoning, et cetera. And [I.C. § 18-]911 does not have--I don't read that as having the same specific intent requirement as attempted rape. The attempt gives the specific intent requirement. That to me was the failure from a legal standpoint in this case is that specific intent requirement.
> I can find to a general intent level that he had the intent to commit a serious felony here, but not to a specific intent level, so that's why I believe [I.C. § 18-]911 is the appropriate crime and that his holding and touching of her with that intent is the felony I would bind over on . . . .

The State subsequently filed the first amended information, which charged Pridgen with the battery charge and several misdemeanor charges.

Pridgen's attorney had concerns about Pridgen's competency and moved for an evaluation. Without providing specifics, Pridgen's attorney indicated he had concerns because Pridgen prevented the use of certain evidence, could not make informed decisions about his defense, and often got confused and upset. The district court ordered the evaluation. The evaluator noted that "there was no evidence of disturbances of perception or thought which would have been suggestive of a psychotic disorder," and Pridgen told the evaluator he had never been diagnosed with or treated for a mental illness. However, the evaluator was "unable to form an opinion regarding mental health issues, or to assess [Pridgen's] basic understanding of legal concepts and ability to assist in his own defense." At a subsequent hearing, Pridgen's attorney expressed his continued concerns about Pridgen's competency and moved for another evaluation. The court asked Pridgen's attorney to prepare an order for the evaluation. Pridgen's attorney never prepared the order, and Pridgen changed attorneys. Pridgen's new attorney told the court the prior attorney abandoned the evaluation because Pridgen refused to fully participate and the

2

evaluator refused to conduct a "piecemeal" evaluation. Neither the court nor Pridgen's new attorney pursued an evaluation thereafter.

Pridgen reached a plea agreement with the State before his trial. In exchange for Pridgen's guilty plea, the State agreed to amend the battery charge, which carried a maximum penalty of twenty years in prison, to a first degree stalking charge, which carried a maximum penalty of five years in prison; dismiss the misdemeanor charges; and recommend probation if Pridgen got into mental health court. The State subsequently filed the second amended information, which only charged Pridgen with stalking. At the plea hearing, the district court conducted a plea colloquy, Pridgen agreed to plead guilty, and the court accepted his plea. The court did not conduct a preliminary hearing on the stalking charge.

Prior to sentencing, Pridgen moved to withdraw his guilty plea. At the plea withdrawal hearing, the State argued that allowing Pridgen to withdraw his plea and go to trial would prejudice the State. According to the State, Pridgen had terrified Williams and as a result, she had moved out of state and was reluctant to cooperate. The district court found Pridgen's testimony at the hearing was "calculated" and "evasive." The court also found consideration supported Pridgen's plea and Pridgen had indicated at the plea hearing that his plea was not coerced and he understood his rights, the nature of the stalking charge, and the consequences of his plea. Thus, the court denied Pridgen's motion. Pridgen timely appeals.

## II.

## ANALYSIS

Pridgen argues the district court lacked jurisdiction to accept his guilty plea and abused its discretion by abandoning its order for a competency evaluation and denying his motion to withdraw his guilty plea.

### A.    Jurisdiction

Pridgen argues the district court lacked jurisdiction to accept his guilty plea. Whether a court lacks jurisdiction is a question of law over which this Court exercises free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). Because the indictment or information provides subject matter jurisdiction to the court, the court's jurisdictional power depends on the legal sufficiency of the charging document. *Id*. at 758, 101 P.3d at 702. "To be legally sufficient, a charging document must meet two requirements: it must impart jurisdiction and satisfy due process." *State v. Severson*, 147 Idaho 694, 708, 215 P.3d 414, 428 (2009).

3

Article I, section 8 of the Idaho Constitution states, "No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate." Further, I.C. § 19-1308 provides, "No information shall be filed against any person for any offense until such person shall have had a preliminary examination . . . unless such person shall waive his right to such examination." Moreover, an amended information may not "charge an offense other than that for which the defendant has been held to answer" at a preliminary hearing. I.C. § 19-1420; *see* I.C.R. 7(e) (The State can amend an information only "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."). Thus, an amended information may not charge a defendant with a new felony charge unless the new charge is a lesser included offense of a previously bound-over charge, a magistrate binds over the new charge in a preliminary hearing, or the defendant waives his right to a preliminary hearing on the new charge. *See* I.C. §§ 19-1308, 19-1420; *State v. Flegel*, 151 Idaho 525, 527, 261 P.3d 519, 521 (2011).

Pridgen asserts the district court lacked jurisdiction to accept his guilty plea to the stalking charge. According to Pridgen, the second amended information did not impart jurisdiction over the stalking charge because the stalking charge was not a lesser included offense of the previously bound-over battery charge, a magistrate did not bind over the stalking charge in a preliminary hearing, and he did not waive his right to a preliminary hearing on the stalking charge. Pridgen claims his guilty plea did not waive his right to a preliminary hearing. Moreover, because "[i]t is well settled that a valid plea of guilty, voluntarily and understandingly given, waives all *non-jurisdictional* defects and defenses," *State v. Fowler*, 105 Idaho 642, 643, 671 P.2d 1105, 1106 (Ct. App. 1983) (emphasis added), Pridgen contends his guilty plea did not waive the *jurisdictional* defects in the second amended information.

Our Supreme Court recently addressed this issue in *State v. Schmierer*, ___ Idaho ___, 367 P.3d 163 (2016). In *Schmierer*, the Supreme Court held that "a defendant waives his right to a preliminary examination by pleading guilty without objection." *Id.* at ___, 367 P.3d at ___; *see Brown v. State*, 159 Idaho 496, 497 n.2, 363 P.3d 337, 338 n.2 (2015) ("By pleading guilty without making an objection to the lack of a commitment by a magistrate regarding the offense alleged in the information, Mr. Brown would have waived his right to a preliminary examination."). Here, Pridgen pled guilty to the stalking charge without objection to the lack of

4

a preliminary hearing regarding the stalking charge. Thus, Pridgen waived his right to a preliminary hearing on the stalking charge.[1] Because Pridgen waived his right to a preliminary hearing on the stalking charge, the district court had jurisdiction to accept Pridgen's guilty plea to the stalking charge.

## B.      Competency Evaluation

Pridgen argues the district court abused its discretion by abandoning its order for a competency evaluation. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Idaho Code § 18-211 requires that "whenever there is reason to doubt the defendant's fitness to proceed . . . the court shall appoint at least one (1) qualified psychiatrist or licensed psychologist . . . to examine and report upon the mental condition of the defendant to assist counsel with defense or understand the proceedings." A trial court ordinarily has no duty to independently inquire as to the competency of a defendant unless the defendant raises the issue by motion or by presenting evidence showing lack of competency. *State v. Fuchs*, 100 Idaho 341, 346, 597 P.2d 227, 232 (1979); *State v. Hawkins*, 148 Idaho 774, 778, 229 P.3d 379, 383 (Ct. App. 2009). When the defendant's competency is not at issue, the trial court must sua sponte inquire as to the defendant's competency only if the court entertains, or reasonably should entertain, a bona fide doubt as to the capacity of the defendant to understand the nature and consequences of the plea. *Fuchs*, 100 Idaho at 346-47, 597 P.2d at 232-33; *Hawkins*, 148 Idaho at 778, 229 P.3d at 383. A bona fide doubt exists if there is substantial evidence of incompetence. *Hawkins*, 148 Idaho at 778, 229 P.3d at 383.

Although no particular facts signal a defendant's incompetence, suggestive evidence includes the defendant's irrational behavior and demeanor before the trial judge and available medical evaluations of the defendant's competence to stand trial. *Id.* Further, while the input of

---

[1]      Although *State v. Schmierer*, ___ Idaho ___, 367 P.3d 163 (2016) is dispositive, we note that Pridgen also expressly waived his right to a preliminary hearing. One of Pridgen's agreements in the pretrial settlement offer signed by Pridgen reads, "Other agreements: <u>Waive Prelim Hearing</u>."

the defendant's attorney is relevant, it is not determinative,[2] and "[t]he mere fact that [a defendant] did not heed his counsel's advice and was uncooperative . . . does not render him incompetent . . . ." *State v. Longoria*, 133 Idaho 819, 823, 992 P.2d 1219, 1223 (Ct. App. 1999).

After Pridgen's attorney moved for a second competency evaluation, the district court asked Pridgen's attorney to prepare an order for the evaluation. Pridgen's attorney never prepared the order, and Pridgen changed attorneys. Pridgen's new attorney told the court the prior attorney abandoned the evaluation and neither the court nor Pridgen's new attorney pursued the evaluation further. Pridgen asserts the court granted the evaluation because it determined there was reason to doubt Pridgen's competence. Thus, Pridgen asserts the court had a mandatory duty under I.C. § 18-211 to follow through on the evaluation whether or not Pridgen's attorneys abandoned the evaluation. Alternatively, he argues the court's failure to pursue the evaluation violated his due process rights and constituted fundamental error.[3]

We disagree. The district court did not determine there was reason to doubt Pridgen's competence by granting the second evaluation. The court simply acted upon the wishes of Pridgen's first attorney. Once Pridgen's new attorney told the court the prior attorney abandoned the evaluation and failed to pursue the evaluation himself, Pridgen's competency was no longer at issue. Thus, the court only had a duty to sua sponte inquire as to Pridgen's competency if it entertained or reasonably should have entertained a bona fide doubt as to Pridgen's capacity to understand the nature and consequences of his plea. The court did not and should not have entertained such a doubt because there was not substantial evidence of Pridgen's incompetence.

Although Pridgen's initial evaluation was inconclusive, the evaluator noted, "There was no evidence of disturbances of perception or thought which would have been suggestive of a psychotic disorder." Pridgen also told the evaluator he had never been diagnosed with or treated for a mental illness. Further, while Pridgen's first attorney expressed concerns about Pridgen's competency, his statements and motions provided little information to the court about behavior suggestive of incompetency. Without providing specifics, Pridgen's first attorney indicated he had concerns because Pridgen prevented the use of certain evidence, could not make informed decisions about his defense, and often got confused and upset. Aside from these unspecified

---

[2]     *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004).

[3]     We need not address Pridgen's assignment of fundamental error because Pridgen has not shown the district court erred by failing to pursue a competency evaluation.

concerns, there is no indication in the record Pridgen was incompetent to enter a guilty plea. A review of the hearing transcripts reveals that while Pridgen was occasionally unfocused, he could express himself coherently and demonstrated an understanding of the criminal proceedings against him. In light of the lack of evidence showing Pridgen's incompetence, we hold the district court did not abuse its discretion by failing to pursue a competency evaluation.

## C.     Motion to Withdraw

Pridgen argues the district court abused its discretion by denying his motion to withdraw his guilty plea because his plea was not knowing, intelligent, and voluntary. Alternatively, Pridgen asserts he showed just cause to withdraw his plea and the State showed only speculative prejudice. Finally, Pridgen asserts his plea was not supported by consideration. Whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court and such discretion should be liberally applied. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986). Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *Id*.

When a defendant moves to withdraw his guilty plea before sentencing, the trial court must determine whether the defendant entered a knowing, intelligent, and voluntary plea. *State v. Hanslovan*, 147 Idaho 530, 536, 211 P.3d 775, 781 (Ct. App. 2008). To determine whether the defendant entered a knowing, intelligent, and voluntary plea, the court looks at the whole record and considers: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial; and (3) whether the defendant understood the consequences of pleading guilty. *Workman v. State*, 144 Idaho 518, 527, 164 P.3d 798, 807 (2007). If the court determines the defendant entered a knowing, intelligent, and voluntary plea, it must ask whether the defendant showed just cause to withdraw the plea. *Hanslovan*, 147 Idaho at 536, 211 P.3d at 781. Once the defendant shows just cause to withdraw the plea, the State may avoid withdrawal of the plea by demonstrating prejudice. *Id.*

Pridgen claims he did not enter a knowing, intelligent, and voluntary plea because he felt pressure to plead guilty and did not understand the consequences of his plea or the nature of the battery charge. According to Pridgen, he felt pressure to either take the plea or go to trial on a

charge he did not understand or go to mental health court.[4] Further, Pridgen asserts he did not understand the value of the State's promises and whether the battery charge required the State to show he had specific intent.

The record belies Pridgen's arguments. First, Pridgen derived these arguments from his testimony in the plea withdrawal hearing. The district court found Pridgen's testimony in the plea withdrawal hearing was "calculated" and "evasive." Because we afford great deference to a trial court's credibility determinations, we do not assign much weight to Pridgen's testimony at the plea withdrawal hearing and therefore, do not find Pridgen's arguments persuasive. *See State v. Miller*, 131 Idaho 288, 295, 955 P.2d 603, 610 (Ct. App. 1997).

Second, Pridgen indicated his plea was not coerced. At the plea hearing, the court asked Pridgen whether anyone made threats against him or promised him anything beyond the promises in the plea agreement to get him to plead guilty. Pridgen stated that he had not received any threats and there were no promises beyond those in the plea agreement. Thus, the record indicates Pridgen's plea was not coerced. The pressure Pridgen felt to pick from the options available to him did not amount to coercion. *See Brady v. United States*, 397 U.S. 742, 751 (1970).

Third, Pridgen indicated he understood the value of the State's promises and the consequences of his plea. At the plea hearing, Pridgen's attorney stated, "[T]he parties have come to an agreement whereby the defendant will plead to one count of felony stalking. In return, the prosecution will dismiss the [misdemeanor charges and] . . . recommend that my client enter the mental health court docket if accepted." The court then asked if Pridgen understood the plea agreement as stated by his attorney, and Pridgen agreed that his attorney's statement accurately reflected the agreement. Thus, the record indicates Pridgen understood the value of the State's promises and the consequences of his plea.

Finally, Pridgen indicated he understood the nature of the stalking charge. At the plea hearing, the court conducted a lengthy inquiry into Pridgen's understanding of the nature of the stalking charge. Pridgen stated he had contacted Williams on multiple occasions and this contact annoyed Williams and violated a no-contact order on at least one occasion. Thus, the record

---

[4] Pridgen also argues he did not understand the alternative courses of action available to him. However, his characterization of the options available to him contradicts this argument. He correctly understood that he could either take the plea or go to trial or go to mental health court.

indicates Pridgen understood the nature of the stalking charge.[5] Pridgen's argument that he did not understand the nature of the dismissed battery charge is irrelevant to the voluntariness of his plea to the stalking charge. *See McCarthy v. United States*, 394 U.S. 459, 466-67 (1969). Moreover, Pridgen never mentioned any confusion about the nature of the battery charge before or at the plea hearing. If Pridgen's confusion about the magistrate's decision to bind the battery charge over to the district court affected his decision to plead guilty, he could have sought clarification before or at the plea hearing. Because the record shows Pridgen's plea was not coerced and he understood the consequences of his plea and the stalking charge, Pridgen entered a knowing, intelligent, and voluntary plea.

Pridgen next argues, in the alternative, he showed just cause to withdraw his plea. He asserts there was just cause to withdraw his plea because he felt pressure to plead guilty and did not understand the battery charge, the consequences of his plea, or the value of the State's promises. Further, he claims the State showed only speculative prejudice because Williams had ulterior motives for her uncooperativeness and move out of state. Pridgen asserts Williams lied to investigators and unlawfully used his credit cards. According to Pridgen, this conduct prompted her uncooperativeness and move out of state, not intimidation by Pridgen.

Pridgen makes the same arguments he made to assert he did not enter a knowing, intelligent, and voluntary plea. These arguments do not demonstrate just cause for the withdrawal of his plea. As discussed above, Pridgen derived these arguments from his testimony in the plea withdrawal hearing, which the district court found to be "calculated" and "evasive." Further, the pressure Pridgen felt was not coercive and the record shows Pridgen understood the consequences of his plea and the nature of the stalking charge and never mentioned any confusion about the nature of the battery charge before or at the plea hearing. Thus, Pridgen has failed to demonstrate just cause for the withdrawal of his plea. Moreover, the State made more than a speculative showing of prejudice. Regardless of Williams' motivations for leaving the state and failing to cooperate with police, the State would undergo particular hardship in trying the case if Williams were unavailable or unwilling to testify.

---

[5] A person commits first degree stalking if he "knowingly and maliciously . . . [e]ngages in a course of conduct that seriously alarms, annoys or harasses the victim and is such as would cause a reasonable person substantial emotional distress" and "[t]he actions constituting the offense are in violation of a . . . no contact order . . . ." I.C. §§ 18-7906(1)(a), 18-7905(1)(a).

Finally, Pridgen argues adequate consideration did not support his plea agreement. Although the analogy may not hold in all respects, plea bargains are essentially contracts. *State v. Gomez*, 153 Idaho 253, 256, 281 P.3d 90, 93 (2012). Thus, contracts and, therefore, plea bargains are only enforceable if supported by valid consideration. *See id.* Pridgen asserts the State's promise to dismiss the battery charge is meaningless because the district court erred in binding over the battery charge. According to Pridgen, the court bound the battery charge over to the district court based on an erroneous assumption that the battery charge was a general, rather than specific, intent crime. Without finding Pridgen had specific intent, he asserts the court did not have probable cause to bind the battery charge over to the district court, and the State's promise to amend the battery charge down to the stalking charge did not provide any consideration for Pridgen's guilty plea.

We disagree. Regardless of the magistrate's reasoning, adequate consideration supported Pridgen's guilty plea. First, Pridgen received a significant benefit from the State's promise to amend the battery charge down to the stalking charge. Instead of facing a maximum penalty of twenty years in prison, Pridgen faced a maximum penalty of only five years in prison. We also note that the State's other promises provided Pridgen with significant benefits. In addition to amending the battery charge down to the stalking charge, the State promised to dismiss several misdemeanor charges and recommend probation if Pridgen got into mental health court.

Second, Idaho Criminal Rule 12(b) provides:

> Any defense objection or request which is capable of determination without trial of the general issue may be raised before the trial by motion. The following must be raised prior to trial:
> > (1) Defenses and objections based on defects in the prior proceedings in the prosecution; or
> > (2) Defenses and objections based on defects in the complaint, indictment or information (other than it fails to show jurisdiction of the court or to charge an offense which objection shall be noticed by the court at any time during the pendency of the proceedings) . . . .

Further, I.C.R. 12(g) states, "Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof . . . ." Here, the magistrate bound the battery charge over to the district court for trial without finding specific intent, and the State subsequently filed the first amended information, which charged Pridgen with the battery charge. Pridgen never objected to the magistrate's failure to find specific intent or the State's first amended information. Therefore, Pridgen waived any objections he had to the

magistrate's failure to find specific intent or the State's first amended information. If Pridgen wanted to challenge the magistrate's decision, he had ample opportunity to do so before pleading guilty. He cannot now attack the magistrate's decision as an end run around his plea agreement. Moreover, any charge a magistrate binds over to the district court may be subject to defenses and even dismissal. To allow defendants to withdraw their guilty pleas due to a lack of consideration, any time a magistrate binds over a charge which may be subject to an objection would undermine the plea bargaining process. In *State v. Wyatt*, 131 Idaho 95, 952 P.2d 910 (Ct. App. 1998), the defendant argued the State's agreement not to refile charges dismissed on the basis of insufficient evidence did not constitute consideration for his agreement to plead guilty. *Id.* at 97, 952 P.2d at 912. This Court held consideration supported the defendant's guilty plea because the charges were legitimate, despite insufficient evidence; the State's threat to bring the charges was a bargaining chip; and other consideration also supported the defendant's guilty plea. *Id.* at 97-98, 952 P.2d at 912-13.

Finally, Pridgen waived this argument by entering a knowing, intelligent, and voluntary plea. "It is well settled that a valid plea of guilty, voluntarily and understandingly given, waives all non-jurisdictional defects and defenses . . . ." *Fowler*, 105 Idaho at 643, 671 P.2d at 1106. Because Pridgen's argument does not assert a jurisdictional defect, he waived this argument by entering a knowing, intelligent, and voluntary plea.

Pridgen entered a knowing, intelligent, and voluntary plea; he did not show just cause to withdraw his plea; and adequate consideration supported his plea. Thus, we hold the district court exercised sound judicial discretion in denying Pridgen's motion to withdraw his plea.

## III.

## CONCLUSION

The district court had jurisdiction to accept Pridgen's guilty plea and did not abuse its discretion by abandoning its order for a competency evaluation or denying Pridgen's motion to withdraw his guilty plea. Pridgen's judgment of conviction for first degree stalking is affirmed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.

11